In re LOVELL-CRESCENT FIELD, LOGAN COUNTY.

No. 32210. March 4, 1947.

178 P. 2d 876.

Robert L. Imler, R. S. Cole, Charles N. Champion, W. F. Semple, and Mayo E. McKeown, all of Tulsa, W. R. Wallace and Richardson, Shartel, Cochran & Pruet, by Earl Pruet, all of Oklahoma City, and Longstreet Hull of Ponca City, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., by Floyd Green, of Oklahoma City, Conservation Attorney; for the State and another.

Paul Brown, of Oklahoma City, for Fox & Fox.

Robinson, Shipp & Robertson, by T. Murray Robinson, and Wallace E. Robertson, all of Oklahoma City, for Davon Oil Company.

BAYLESS, J. This is an appeal from an order of the Corporation Commission extending a well-spacing and drilling order to cover additional lands. The plaintiffs in error, Sinclair Prairie Oil Company, Continental Oil Company, British-American Oil Producing Company, Sunray Oil Company, Gulf Oil Corporation, Deep Rock Oil Corporation, Magnolia Petroleum Company, Roy J. Turner, and F. E. Harper, were protestants below. Fox & Fox supported by Davon Oil Company, applied for the extension order. Parties will be referred to herein as applicants and protestants. In October, 1940, an oil well was completed in the Layton sand, approximately two miles northwest of the town of Crescent and five miles south of the town of Lovell. Upon application of the lessee, 40-acre well spacing was ordered established by the Corporation Commission. Apparently this well was thought to be near the south end of the field. It is located near the southern boundary of the area, approximately two miles east and west by five miles north and south, covered by the spacing order. In July, 1943, the commission, by order, extended the well spacing three miles further to the south, annexing six additional sections, including part of the town of Crescent. In May, 1944, upon application of the conservation officer, the commission, by order, extended the well-spacing area to include all of the town of Crescent and 160 acres immediately to the south. No appeal was taken from any of the foregoing orders. The commission, after a lengthy hearing on the application of Fox & Fox, entered an order in March, 1945, extending the boundary of the area covered by the previous spacing orders one and one-half miles further to the east

and two miles further to the south. Protestants have appealed from this order.

Protestants contend, the original well-spacing order and the two extensions prior to the one complained of are void on their face for the reason that the commission attempted to regulate seven separate common sources of supply in one order, and the effect of the original order and the extensions was to limit production to one well per 40 acres for all of the seven common sources of supply, which would permit production from one common source of supply only and prohibit production from the other six common sources of supply in violation of the well-spacing law, chapter 59, Session Laws of Oklahoma, 1935, page 232 et seq., sections 1 to 6, inclusive (52 O.S. 1941 §§85-87, 136-7-8). The statute clearly would not permit this to be done. Applicants say the original order and the extension orders merely specified seven different common sources of supply in one cause and that the seven spacing orders entered therein were several and not not joint; likewise, that the spacing order would permit the production of one well from each common source of supply per 40-acre tract. The application for the original spacing order states:

". . . It appears . . . that said area is underlaid by more than one common accumulation of oil and gas; that these common accumulations of oil and gas are separated from each other by strata and are not connected with each other in any manner, and that there are therefore many different common sources of supply in said area.

"Your applicant further requests the Honorable Commission to enter an order for well spacing applicable severally to the several separate common sources of supply."

The original well-spacing order reads:

"That prior to the completion of said Danciger-Richards No. 1 well, numerous wells producing oil and gas were drilled in the Lovell Pool and are now producing from the Tonkawa Sand, Hoover Sand, Elgin sand, Simpson Dolomite, Lovell sand, Middle Layton, and Lower

Layton sand common sources of supply; *That said common sources of supply are separate and distinct from each other and from other common sources of supply in the area;* . . .

". . . *well spacing and/or drilling units forty acres in size and in the form of a square, should be established for the development of the Tonkawa sand, Hoover sand, Elgin sand, Simpson Dolomite, Lovell, Middle Layton, and Lower Layton sands,* . . .

"*That no well shall be allowed to be produced from more than one common source of supply at the same time.*" (Emphasis ours.)

We have considered all of the orders referred to above and construe them to provide a separate spacing and drilling unit for each of the seven common sources of supply. It would have been better practice for the commission to have entered a separate order for each common source of supply, or at least to have spaced each separate source of supply by separate paragraph in the one order, but failure so to do is not fatal to the validity of the order since the separate sources of supply were not treated as one common source of supply for the purpose of spacing and drilling.

Protestants contend that since the original order and the extensions are void, the application for the extension appealed from was, in effect, an original application, and being such, the order appealed from is void because 80 per cent of the lessees did not consent to this extension and for the further reason that this extension will cause, rather than prevent, the commission of waste. The protestants offered evidence at the trial tending to establish that the effect of extending the well-spacing order would result in economic waste in the area covered by the extension. In view of our holding that the original order and the extensions are valid, the questions of waste and lack of consent of lessees is eliminated for the reason that the sole question before the commission, under section 3(d) of the Act of 1935 (52 O.S. 1941 §87(d)) was,

whether, under the application and proof, the "oil development, or trend of such development" indicated that the previous well-spacing order should be extended to include the additional area involved in the application.

The difference between the procedure and proof necessary to obtain an original spacing and drilling order and that which is necessary to extend the boundary of an established well-spacing area, is apparent from the following statutory provisions:

Section 3(d) of the Act of 1935 (sec. 87 (d) ):

"The commission under proper application and proof, and in conformity with the procedural requirements of said Chapter 131, of the Session Laws of 1933, shall have the power to enlarge and extend the boundaries of a common source of supply when oil development, or the trend of such development, shall indicate that an additional area should be included therein and, thereupon, the commission, by proper order, shall require the same spacing and drilling units to the additional portion of the common source of supply."

Section 1 of the act (sec. 85) provides that the term "waste", as applied to the production of oil, in addition to its ordinary meaning, shall include economic waste; and that production of oil or gas in such manner as to constitute waste is prohibited.

Section 3(a), sec. 87(a), gives the commission power to establish well-spacing and drilling units of uniform and specified size and shape for any common source of supply in order to prevent waste. This section further provides:

". . . The drilling unit shall not exceed ten (10) acres in size, unless eighty per cent (80%) or more of the lessees of record as of the date of bringing in the first well and owning at least eighty per cent (80%) of all the acreage embraced within the probable producing area of the common source of supply agree to a larger unit, but in no event shall such a drilling unit exceed forty (40) acres. . . ."

Section 3(b), sec. 87(b), provides:

"In establishing a well spacing or drilling unit for a common source of supply hereunder, the acreage to be embraced within the unit and the shape thereof shall be determined by the Commission from the evidence introduced at the hearing, and the following facts, among other things, shall be material: (listing nine facts to be considered) (parentheses ours) . . . And Subject To The Other Provisions Of This Act, said order shall direct that where a unit is held or owned as an entirety *the well permitted that unit shall be located as near the center thereof as may be. . . ."* (Emphasis ours.)

Section 4, sec. 136, makes the act subject to all of the procedural requirements of chapter 131, Session Laws of Oklahoma, 1933, including the right of appeal to the Supreme Court of Oklahoma.

Chapter 131, supra, section 14 (52 O.S. 1941 §97), covering the procedural requirements of the act, provides for the filing of application, giving of notice by publication to interested parties, and gives the commission the power of a court of record in hearing such matters.

Section 28, chapter 131, supra (52 O.S. 1941 §111) prohibits collaterial attack on orders, rules and regulations made under the provisions of this act.

Section 29 (52 O.S. 1941 § 112):

"Any person affected by any . . . order of the commission shall have the right at any time to apply to the commission to repeal, amend, modify, or supplement the same. . . . An appeal shall lie to the Supreme Court from any order made by the commission in any such proceedings. . . ."

Section 30 (52 O.S. 1941 §113) provides for appeal to the Supreme Court from an order of the commission under the provisions of this act in the manner now provided by law for taking appeals from orders of the commission affecting transportation and transmission companies.

Protestants further urge that even though the original spacing order may

be valid, the order appealed from is void because 80 per cent of the lessees did not consent to the extension, under the provisions of section 87(a), and because the order disregarded some of the nine factors required to be considered to establish well spacing under the provisions of section 87(b). These provisions of the statute relate to an original well-spacing proceeding and not to a proceeding to enlarge and extend the boundaries of an area spaced by prior valid order.

The last application alleges that the Layton sands are one common source of supply, which is contrary to the original well-spacing order wherein the commission found that the Middle Layton sand and the Lower Layton sand were separate common sources of supply. The order appealed from provides:

"That the present oil development and the trend of such development in said area indicate that the additional area covered by said application is underlaid by the Layton sands common source of supply, which underlies all or substantially all of the area in which drilling and spacing units have heretofore been established. . . ."

This order modifies the original well-spacing order to the extent of finding that both Layton sands are one common source of supply. The commission had the power to so modify its original order. 52 O.S. 1941 §112.

The substantial issue of fact in this case is whether production from the Layton sands in the area involved is from more than one common source of supply. There are a number of wells producing from the Layton sand in the vicinity of and to the north of the discovery well in what is commonly called the Lovell field. About one-half a mile south and southwest of the town of Crescent there is considerable production from the Layton sand. This producing area, commonly called the Crescent field, is approximately two miles east and west by three and one-half miles north and south. The two exten-sions prior to the one appealed from cover the northern part of the Crescent field, including about one-fourth of this field. Production is had at approximately the same depth in both fields. Several geologists, testifying on behalf of protestants, stated that in their opinion the Lovell field and the Crescent field are produced from the Layton sands from separate common sources of supply; that the oil-producing Layton sand "pinches out" at the south end of the Lovell field. These opinions are based upon the fact that one well at the southern extremity of the Lovell field was brought in as a dry hole and two offset wells were not commercial producers. There has been no further exploration between the two fields. Applicants presented about the same number of witnesses who testified that both fields produced from the same common source of supply. They based their opinion upon the following facts: The same type of oil and oil sand is found in both fields. Phillips Petroleum Company has recently obtained production from the Layton sand approximately one and one-half miles east of the Lovell field and two and one-half miles north of the town of Crescent. The evidence establishes that this production is from the same common source of supply as the Layton sand production in the Lovell field. Two miles south of the Phillips production, a large gas well was brought in which also produces considerable oil, perhaps 40 barrels daily. Protestants' witnesses are of the opinion that this well produces from a separate common source of supply than those in the Crescent field because it produces from a 30 feet greater depth than a well one-half a mile south of the town. Applicants' witnesses draw the opposite conclusion from these facts.

52 O.S. 1941 §84 provides:

"The term 'Common Source of Supply' shall comprise and include that area which is underlaid, or which from geological or other scientific data, or from drilling operations, or other evi-

dence appears to be underlaid by a common accumulation of oil or gas. . . ."

Under the provisions of section 20, art. 9, Constitution of Oklahoma, as amended by Senate Bill No. 61, Session Laws, 1941, section 1, p. 544, it is our duty to affirm the order of the commission if it is "sustained by the law and substantial evidence." That the trend of development indicates that the two fields produce from the same common source of supply in the Layton sands, is supported by substantial evidence.

The order appealed from is affirmed.