Application of BRITISH-AMERICAN OIL PRODUCING CO. et al.

No. 33367. Jan. 17, 1950.

*213 P. 2d 841.*

V. P. Crowe, Ben L. Burdick, and Embry, Johnson, Crowe, Tolbert & Shelton, all of Oklahoma City, for plaintiff in error.

D. A. Richardson, Earl Pruet, and Richardson, Shartel, Cochran & Pruet, all of Oklahoma City, for defendants in error.

Floyd Green and Charles White, for Oklahoma Corporation Commission.

ARNOLD, V.C.J. Appeal by Davon Oil Company et al. from an order of the Corporation Commission made on application of British-American Oil Producing Company in cause No. C. D. 1354, being Orders Nos. 20313 and 20336.

On January 29, 1947, British-American Oil Producing Company and F. E. Harper and Roy J. Turner filed an application before the Commission, and on June 6, 1947, they filed an amended application, in which they alleged that 11 wells, which they described, in the Lovell-Crescent field, were natural gas wells, producing no oil; that the applicants owned an interest in certain of those wells, each drilled on an 80-acre tract; that an allowable should be fixed for the natural gas wells, and that in fixing the same acreage should be taken into consideration. They alleged that one natural gas well would adequately and economically drain 80 acres, and that, for the purpose of preventing waste and protecting correlative rights, the Commission should fix allowables for the wells described, and should allocate a double allowable for the wells described obviating the necessity of drilling another well on each of the 80-acre tracts. Later Bahan Brothers joined in that application.

Davon Oil Company filed an objection to the granting of the application, in which it stated that it had drilled over 70 wells in the Lovell-Crescent Pool and was the operator of the greatest number of wells in that pool; that the Commission had no jurisdiction of the application, because the same constituted a collateral attack upon the spacing orders theretofore made; that under the prior orders the applicants and all other operators were permitted to drill one well to each 40 acres, and that applicants, having drilled only one gas well to 80 acres, should not be given double allowables on such wells.

After hearings were had on the application the Commission entered its Order No. 20313 on September 9, 1947, and thereafter, on September 15th, corrected an obvious error therein by Order No. 20336. It is from this correction order that this appeal is brought by the protestants.

For reversal of this order protestants rely in their brief and argument on two primary propositions, as follows:

"1. That the order of the Commission should be vacated, as it is contrary to law and not supported by substantial evidence.

"2. That the order of the Commission should be vacated because the application of the applicants was a collateral attack on the previous spacing and allowable gas and oil ratio orders of the Commission."

In their argument the first proposition is presented in three subdivisions, A, B, and C. It is first contended that applicants are precluded by law from seeking a change in an established proration formula without compliance with existing spacing pattern by drilling additional wells on their 80-acre tracts.

In support of this contention protestants cite and quote from a number of decisions by the Texas Civil Appeals Courts announcing a rule of "self-help" where one party complains of drain-

age without drilling additional wells allowed under spacing regulations. We are not inclined to circumscribe the statutory power and authority of the Corporation Commission by following a rule of a foreign jurisdiction in its application of statutory language similar to but not identical with ours, especially when the question there under consideration was not limited to gas production.

Under subdivision B it is asserted that the order was not supported by substantial evidence as it related to correlative rights.

It must be remembered that the Commission was already well advised as to conditions in the Lovell-Crescent field through previous hearings held resulting in successive orders having to do with oil well spacing units, extensions of territory resulting from development and conservation of the oil and gas supply. These successive hearings and orders covered a period of time from January 13 1941, to June 6, 1946. At least two of these orders reached this court and were here sustained. (In re Lovell-Crescent Field, 198 Okla. 284, 178 P. 2d 876; In re Application of Continental Oil Co., 198 Okla. 288, 178 P. 2d 880.) With this background of administrative and legislative action by the Commission concerning this particular field, we think that this contention of protestants is without substantial merit.

Eight expert witnesses testified on this hearing, three being called by applicants and five by protestants. There was practical unanimity in their testimony to the effect that the underlying producing sand in the field pinched out to the east of applicants' present wells and that the odds were against production being obtained by drilling wells on the east 40 acres of their 80-acre tracts. There was conflicting testimony as to the extent of drainage of gas to and from applicants' 80-acre tracts. The evidence showed that the cost of drilling a well in the area was approxmiately $35,000.

On June 6, 1946, the Commission had entered its conservation Order No. 19001 fixing allowable production of oil and gas in the field under established spacing units at 125 barrels of oil or 500,000 cubic feet of gas per well, whichever was first produced. The instant application sought an exception to or modification of that order by reason of pool-edge location. By specific language in 52 O.S. Supp. 1947 §87.1, subd. (b), the Commission is authorized to make such an exception when reasonably necessary, but "Whenever such an exception is granted, the Commission shall adjust the allowable production for said spacing unit and take such other action as may be necessary to protect the rights of interested parties.

By the order here involved applicants were excused from drilling on each east 40 acres of their 80-acre tracts, but were denied the double allowable of gas production sought. Instead, and by way of adjusting the conflicting rights and claims of the parties, the Commission fixed the allowable gas production from the seven named and described wells of applicants at 875,000 cubic feet per well.

We cannot say that this adjustment was not reasonable and not sustained by substantial evidence.

Protestants' contention under subdivision C is that there was no substantial evidence to support the order as it relates to waste. It is true that there is no evidence in the record which shows the existence of any of the seven conditions mentioned in 52 O.S. Supp. 1947 §86.3, which would legally constitute gas waste, but there is evidence that one well will adequately and economically drain an 80-acre tract, and that adjoining 80-acre producing units on which two wells have been drilled will drain gas from the 80-acre tract of applicants. The order here complained of does not purport to be intended to prevent gas waste as defined by section 86.3, Id., but expressly states "that in order to protect the correlative rights of the interested operators,

prevent unfair drainage and prevent economic waste that might be caused by the drilling of unnecessary wells," the application for modification of Order No. 19001, fixing allowable production in the Lovell-Crescent pool, should be granted. Those wells producing both oil and gas by Order No. 19001 were permitted to produce 500,000 cubic feet of gas per well per day so that on the adjoining tract of protestants on which two producing wells have been drilled their daily allowable of gas production would be 1,000,000 cubic feet, while applicants could produce only 500,000 cubic feet per day although their single well is adequately and economically draining their 80-acre tract. By the order here complained of applicants were limited to 875,000 cubic feet of gas per day which leaves a differential against them and in favor of protestants of 125,000 cubic feet of gas per day, which may well have been considered by the Commission as compensating any drainage that may flow from protestants' tracts to the tracts of applicants. We cannot say the adjustment made is inequitable or that it does not protect the correlative rights of all concerned. It avoids the economic waste which would follow the drilling of a second well on applicants' tracts in order to entitle them to allowable production equal to that of protestants.

Protestants' second proposition asserts that the order of the Commission here complained of should be vacated because the application for modification of Order No. 19001 is a collateral attack upon prior spacing and allowable orders of the Commission.

In their argument in support of this proposition protestants say:

"It is believed that the previous spacing orders of the Commission in the Lovell-Crescent Field are decisive and that applicants cannot collaterally attack these orders. Their remedy was by direct appeal to the Supreme Court which they failed to do. They have shown no changing conditions which would warrant a modification of the gas-oil ratio allowable orders of the

Commission nor have they shown that the 40-acre spacing order caused waste over the entire field."

At the time the original drilling and spacing order was entered by the Commission in January, 1941, the Commission had no jurisdiction under the law to fix spacing units for gas production where wells produced gas only. The first statutory authority granted to the Commission for fixing drilling units for gas wells where gas only is produced was contained in the 1945 Act of the Legislature, and it was after this authority was conferred on the Commission that it entered Order No. 19001 fixing allowables for oil and gas production in this particular field. This being true, an appeal to this court from the original order of the Commission fixing drilling and spacing units would have been futile because nothing would have been presented to this court by such an appeal of which the Corporation Commission then had jurisdiction. When Order No. 19001 was entered by the Commission it was expressly stated therein that the order was temporary and subject to change with changing conditions and that the daily allowable maximum production of gas will change due to changing conditions in the field. It is asserted that no change of conditions was shown, but we think the testimony definitely shows a pinching out of the Layton sand east of applicants' present location and that further drilling in that area would probably result in no production. It further appears from the testimony that there is drainage from applicants' 80-acre tracts to the adjoining 80-acre tracts of protestants and that there is probable counter drainage from protestants' tracts to those of applicants. The evidence of these facts we think authorized the Commission to find that there had been a change of condition in this area since its order of June 11, 1946, was entered and that under the terms of that order it had jurisdiction to modify the same when proof of subsequent conditions justified its modification.

We think that protestants' contention that the application in this case was a collateral attack on prior spacing and allowable orders of the Commission is erroneous. Upon a consideration of the entire record we cannot say, as a matter of law, that the action of the Commission was not in the interest of all the parties concerned or that it was not a proper method of adjusting their correlative rights. There being substantial evidence supporting the order here complained of, it is affirmed.

Order affirmed.

. DAVISON, C. J., and WELCH, CORN, GIBSON, LUTTRELL, and JOHNSON, JJ., concur. HALLEY and O'NEAL, JJ., dissent.