## SUPERIOR OIL CO. v. OKLAHOMA CORPORATION COMMISSION.

Nos. 34997, 34998, 35192. March 25, 1952.

*242 P. 2d 454.*

Richardson, Shartel & Cochran and Richard W. Fowler, Oklahoma City, for plaintiff in error.

Tom Anglin, Robinson, Shipp, Robertson & Barnes, by T. Murray Robinson, and Floyd Green, Oklahoma City, for defendants in error.

O'NEAL, J. The question presented on this appeal is the validity of certain orders of the Oklahoma Corporation Commission. The facts presented to the commission upon which the orders are based are not in substantial dispute. The

Superior Oil Company and W. B. Osborn are the owners of equal undivided interests in oil and gas leases on four separate 40-acre tracts of land in Garvin county, Oklahoma.

Prior to the orders of the commission here drawn in question the Corporation Commission established 40-acre drilling and spacing units for the development of the Hart and Gibson common sand sources of supply covering the Katy and Panther Creek Fields in Garvin county, Oklahoma. The Superior Oil Company and W. B. Osborn were unable to agree on terms for the drilling of wells on these separate tracts of land. Each party desired to drill each of the separate tracts and operate the properties if they proved productive. Unable to reach an accord, Osborn filed four separate applications with the Corporation Commission praying for an order pooling the oil and gas interests as to each separate tract and authorizing him to drill a well on each separate unit. Osborn's application before the commission, No. 2818 and No. 2819, covered separate drilling and spacing units in the Katy Field in section 35, township 2 north, range 2 west in Garvin county, Oklahoma.

On Osborn's application in No. 2818 before the commission, Superior agreed to an operating contract and, therefore, this appeal does not involve that application. The operating agreement was without prejudice to Superior in respect to the remaining three tracts in which the parties had equal undivided interests. By agreement the hearing before the commission on Osborn's application in Case No. 2819 was postponed until after the completion of the first well.

Shortly after the filing of the two applications last referred to, Osborn filed application No. 2878 and application No. 2930 before the commission praying for orders pooling the oil and gas interests and authorizing applicant to drill a well on each separate tract in the lands described in section 21, township 3 north, range 3 west in the Panther Creek Field in Garvin county, Oklahoma. The commission consolidated the pending applications and the same were heard on December 7, 1950.

In Cases No. 2878, No. 2930 and No. 2819 before the commission, Superior filed its petition in intervention, alleging an undivided one-half interest in the oil, gas and other minerals under the drilling and spacing units involved as to each separate tract, alleging that no agreement had been reached by Osborn and Superior concerning the drilling of wells on each of said separate tracts. Superior alleged that it was ready, able and willing to drill a well on each of the three tracts and desires to do so and invokes the commission's jurisdiction under applicable statutes requiring the pooling and development of each unit. Superior alleged that in fairness to both Osborn and intervener each of them should be permitted to drill and operate two of the four wells involved and that Osborn should not be given the right to drill all four of said wells to the exclusion of the intervener.

The three cases before the commission, namely No. 2878, No. 2930 and No. 2819, were consolidated for hearing. The testimony introduced was equally applicable to each numbered case. As counsel are in accord that there is no substantial dispute of the facts as disclosed in the records, and as the findings of fact and orders of the commission in three cases are identical, the cases on appeal by order of this court have been consolidated for review and for our opinion. They appear as: Case No. 2878 is docketed as No. 34998; Case No. 2930 is docketed as No. 34997; Case No. 2819 is docketed as No. 35192.

With reference to case No. 2819 before the commission, which case on appeal is numbered 35192, it appears that in response to Osborn's application for an order for the pooling of the mineral interests and for drilling of the well on the tract involved, that Superior filed its petition of intervention asking for the same relief as in the consolidated

cases then pending before the commission. Case No. 2819 was set for hearing by the commission for April 18, 1951. On April 16, 1951, Osborn filed with the commission a motion to dismiss his application in case No. 2819. The commission heard the motion and on May 1, 1951, entered its order dismissing the case, predicating its order on a finding that Osborn was then actually engaged in drilling a well on said tract and that Osborn as of that date was not seeking any affirmative relief; and, therefore, it would be improper to grant Superior any relief on its petition of intervention.

Assuming Osborn had otherwise complied with applicable rules and regulations of the commission as applied to the tract in question, he had the inherent right as the owner of an undivided mineral interest in the tract to drill the same for production. Of course, he thus assumed the entire risk of the venture if it proved a failure. As a tenant in common of oil and gas underlying the tract when production is obtained he is accountable to his cotenant for the market value of his share of the oil, gas and minerals produced, less the reasonable and necessary expense of development, operation and marketing the same.

Evidence was produced by the respective parties tending to establish that the tracts involved in the commission's hearing in cases No. 2878 and No. 2930 were underlaid by a productive formation; that other drilling operations in the field made it advisable that the tract in question be drilled, completed and equipped for production. That the approximate cost of drilling and completing each well for production was the sum of $85,000. That the value of the oil and gas leases in question was of the reasonable value of $500 an acre. The commission under its Order No. 24263 covering the consolidated cases was entered on December 7, 1950. The commission made the folowing findings of fact:

"3. That the parties have been unable to reach an agreement for the orderly development for the unit and requests the Commission to issue such order as will protect the interests of all the parties.

"4. That for the purpose of this application, the sum of $85,000 is fixed as the cost of drilling and completing the well in the unit to the Hart Sand common source of supply, which common source of supply was spaced by Order No. 21891; that in the event there is a dispute as to the actual cost of drilling and completing a well after same has been completed, then the Commission reserves jurisdiction of this cause for the purpose of redetermining and fixing the actual cost of drilling and completing the well.

"5. That the fair and reasonable cost of the lease bonus in this area is $500.00 per acre.

"6. That applicant herein, W. B. Osborn should be given the right to drill and operate said well and the respondent Superior Oil Company should be given the right to either participate in the cost of said well or to sell its lease to W. B. Osborn for the sum of $500.00 per acre; that W. B. Osborn controls the oil and gas leasehold interests on 1/2 of the unit and the Superior Oil Company controls or owns the oil and gas leasehold interests on the other half of the unit.

"7. That ten days' time should be allowed the respondent Superior Oil Company within which to determine whether or not it desires to participate in the working interests in the well by paying its proportionate share of the cost thereof or accepting a bonus for its lease of $500.00 per acre."

and upon said findings of fact entered its order, the pertinent provisions thereof being paragraphs 4 and 5, which read as follows:

"4. That the Superior Oil Company be allowed 10 days' time within which to determine whether or not it desires to participate in the working interests in said well by paying its proportionate share of the cost of the drilling and completion thereof or accepting the sum of $500.00 per acre for its lease in said unit.

"5. That in the event the respondent Superior Oil Company has not paid to

the applicant herein its proportionate share of the cost of the drilling and completion of said well within said 10 day period then it shall be assumed that the respondent Superior Oil Company has elected to accept the sum of $500.00 per acre for its lease in said unit and said lease shall be transferred to W. B. Osborn, the applicant herein, by operation of this order, upon tender by W. B. Osborn of such lease bonus to the respondent, Superior Oil Company."

Superior by petition in error under its Specification 1 states:

"The Commission's orders granting Osborn the right to drill and operate all four wells, and denying Superior the right to drill or operate any of them, were manifestly unfair unreasonable, capricious and discriminatory."

Under the amendment of section .20, article IX of the Constitution of Oklahoma, we are not at liberty to reverse the Corporation Commission's order insofar as the commission designated Osborn to drill the respective wells, produce and operate the same under the applications filed by him, this for the reason that there is substantial evidence to support the finding and order of the commission in that respect. We are unable to agree with Superior's contention that the commission was bound to designate it to drill two of the wells, rather than designate Osborn to drill all four of them. We have held that where the commission's order is supported by substantial evidence its order must be sustained. In re Lovell Crescent Field, 198 Okla. 284, 178 P. 2d 876; Peppers Refining Co. v. Corporation Commission, 198 Okla. 451, 179 P. 2d 899.

Osborn's application No. 2878 and No. 2930, here No. 34998 and No. 34997, respectively, further invokes the commission's jurisdiction and authority for an order for compulsory pooling of the mineral interests covering said separate tracts of land. The primary relief sought was the pooling of the mineral interests of the parties to protect their correlative rights, as well as the rights of other mineral interests under the

separate tracts. The provisions of the well spacing and drilling unit statute (52 O. S. A. 87.1 (d) ) was held constitutional by this court in Croxton v. State, 186 Okla. 249, 97 P. 2d 11.

Superior, not challenging the validity of the statute, asserts that as applied by the commission deprives it of guarantees under the Federal and State Constitutions and that in any event the orders are arbitrary, unreasonable, unjust and exceed the commission's jurisdiction.

By reference to Title 52, 87.1 (d) supra, we find that: "Such pooling order of the Commission shall make definite provisions for the payment of cost of the development and operation, . . . " and orders require such pooling shall be made after hearing and shall be upon terms and conditions as are just and reasonable. Whether the order is just and reasonable is a question of law for our decision.

Osborn contends that the order means that Superior was required within ten days to say that it desired to participate in the well and that it would pay its proportionate share of the cost of drilling and completion of the well. We do not so construe the order when sections 4 and 5 are read together. A casual perusal of section 4 might lead to the construction advanced by Osborn, but section 5 of the order definitely places a greater burden on Superior. It reads:

"5. That in the event the respondent Superior Oil Company has not paid to the applicant herein its proportionate share of the cost of the drilling and completion of said well within said 10 day period then it shall be assumed that the respondent Superior Oil Company has elected to accept the sum of $500.00 per acre for its lease in said unit and said lease shall be transferred to W. B. Osborn, the applicant herein, by operation of this order, upon tender by W. B. Osborn of such lease bonus to the respondent, Superior Oil Company."

As we construe the order it definitely requires Superior to pay over to Osborn

within ten days the sum of $85,000, which the commission found to be. one-half of the costs of two wells. No provision was made in the alternative permitting bond as security for the obligation, or that payments be made as drilling operations progressed. Osborn had not commenced drilling operations and as to when he would do so is not disclosed by the record. Speaking solely in the abstract, it is common knowledge that an oil operator today is financially able to comply with his contracts, but by the morrow ill fortune has overtaken him and though ever so willing, he cannot carry out his obligations.

We concede that the Corporation Commission has a wide discretion in the performance of its statutory duties. We cannot substitute our judgment on disputed questions of fact unless the findings of the commission are not as commanded by the Constitution, supported by the law and substantial evidence.

Whether the order is a reasonable regulation under the police power must be determined from its necessity to accomplish the purpose of the statute. In cases coming before us, we find that the commission's orders have been in the alternative, that is, to make a cash deposit or submit an approved bond to secure the operator in his costs in the drilling operations. Amis v. Bryan Petroleum Corp., 185 Okla. 206, 90 P. 2d 936; Denver Producing & Refining Co. v. State, 199 Okla. 60, 182 P. 2d 503.

The order of the Corporation Commission in its Case No. 2819, and in this court No. 35192, is affirmed. The order of the Corporation Commission as applied to its case No. 2930, and in this court No. 34997, and the commission's order in its case No. 2879, and in this court No. 34998, is affirmed insofar as said order designates W. B. Osborn to drill one well on each separate tract involved in the applications before the commission.

There is merit in the suggestion of Superior that it ought not to be required to pay $85,000 to Osborn without bond assuring Superior that the money would be used only for drilling and that full accounting would be made to Superior as to the actual cost of drilling and the return of any unused portion of the money. We notice the statement in Superior's brief that "as stated in our original brief, a bond should be required of one party or the other and neither should be required to assume any risk." We observe from the record that no request was made of the Corporation Commission as to the making or requiring of any bond by either party. Surely, if Superior pays such sum in cash to Osborn, Superior would be entitled to a bond guaranteeing proper performance, and doubtless the Corporation Commission would have required such bond at any time upon request. It also might well be that if Superior in lieu of cash payment in advance had made application therefor, the Corporation Commission would have permitted Superior to make bond guaranteeing prompt payment of its portion of the drilling cost as the drilling progresses.

And our affirmance is placed upon this condition, to wit: That Superior within 15 days pay its share of the cost of drilling now completed, and that as to future payments Superior may now make bond for the prompt payment thereof, the conditions and approval of the bond to be fixed by the Corporation Commission, or if Superior pays the aggregate estimated drilling cost in advance, Osborn shall make bond guaranteeing that he will properly use and expend such money and fully account therefor, the conditions and approval of that bond to be made by the Corporation Commission.

Affirmed as modified.

WELCH, CORN, DAVISON, JOHNSON, and BINGAMAN, JJ., concur. ARNOLD, C. J., HALLEY, V. C. J., and GIBSON, J., concur specially.

GIBSON, J. (concurring specially). I concur in the majority opinion except in so far as it may affirm that part of the commission's order which re-

218

quires that Superior pay its proportionate share of the cost of drilling or accept a bonus for its lease of $500 per acre.

I am of the opinion that that part of the order is invalid and is in excess of the commission's authority and that it deprives the Superior Oil Company of its property without due process of law and denies to it the equal protection of the laws.

ARNOLD, C. J., and HALLEY, V. C. J., concur in these views.