Earl F. WAKEFIELD, Plaintiff in Error,

v.

STATE of Oklahoma, The Corporation Commission of the State of Oklahoma, composed of Ray C. Jones, Chairman, Ray O. Weems, Vice-Chairman, and Wilburn Cartwright, Member and The Texas Company, a corporation, Defendants in Error.

No. 37053.

Supreme Court of Oklahoma.

Jan. 22, 1957.

J. B. McKay, El Dorado, Kan., Lynn Adams, Oklahoma City, for plaintiff in error.

Yates A. Land, Philip R. Wimbish, Elmer W. Adams, Tulsa, Ames Daugherty, Bynum & Black, Fisher Ames, Floyd Green, Oklahoma City, for defendants in error.

DAVISON, Justice.

This is a proceeding in this court in the nature of an appeal by Earl F. Wakefield from an order of the Corporation Commission pooling the separably owned mineral estates, adjudicating the rights of participation in production and other correlative rights, and authorizing the drilling of a gas well by the Texas Company to the common source of supply in a drilling unit in Beaver County, Oklahoma. The parties will be referred to as Wakefield, Texas Co., and the Commission.

In December 1954, the Commission made and entered its order creating drilling and spacing units of one entire governmental section each in the Morrow Sand common source of supply in the vicinity of the property here involved. Subsequently, the Texas Company filed its application for an order pooling the individual mineral estates in the section or drilling unit involved and authorizing the drilling of a well thereon. The Texas Co. owned a mineral lease on three fourths of the section and Wakefield owned a lease on the other one fourth. After a hearing and report by the trial examiner, the Commission, on June 28, 1955, made and entered its order, a review of which, Wakefield is seeking by this proceeding. Said order is as follows:

"Order.

"*It is Therefore Ordered* by the Corporation Commission of Oklahoma as follows:

"1. That The Texas Company be and it is hereby authorized to drill and produce a well for the production of natural gas from the Morrow Sands common source of supply in the drilling and spacing unit described as Section 27, Township 5 North, Range 25 East, in Beaver County, Oklahoma, and take the full allowable of production therefrom.

"2. That all persons owning leasehold interests within said spacing unit shall have the right to participate in the cost of drilling of said well and in the production therefrom upon the payment

by them of their proportionate share of the cost of the completion of said well and the sum of $107,000.00 is hereby fixed as the cost of said well.

"3. That in the event there is a dispute as to said cost after drilling and completion thereof, the Commission reserves jurisdiction for the purpose of determining said cost.

"4. That those parties who do not desire to participate in said well shall have the option of accepting $25.00 per acre as mineral compensation or bonus for their lease, and unless said parties make an election within 10 days from the date of this order to participate in the working interest in said well, then it will be presumed that they have elected to accept the bonus of $25.00 per acre fixed herein.

"5. That the Exceptions filed herein are hereby overruled and denied.

"*Done and Performed This* 28th day of June, 1955."

Because of the lack of pipe line facilities there was no present market for any gas discovered by the drilling of said authorized well. There were other completed wells in the vicinity potentially capable of production had the transportation facilities been available. The Texas Co. was in the position of having its leases expire in a short time unless a well was drilled thereunder. It is Wakefield's position here that the drilling of a well by the Texas Co. was for the purpose of protecting its leases and not for the purpose of preventing waste and promoting conservation and that, therefore the Commission had no authority to make any pooling and participation order. He further contends that the only authority vested in the Commission to make any order of forced pooling must be by virtue of 52 O.S.1951 § 87.1(d) and that the extent of the power conferred thereby was no more than (to) make all the "owners in the spaced unit tenants in common, and does not enlarge upon the rights of tenants in common in the drilling of the spaced area, except to prohibit more than one well in the spaced unit

to a common source of supply" and that, for said reason there was no statutory authority either express or implied, for the above quoted order.

The argument advanced to support that position is that the order pooling the two mineral estates created an "enforced tenancy in common" under the holding in the case of Amis v. Bryan Pet. Corp., 185 Okl. 206, 90 P.2d 936; and that being tenants in common, the parties possessed the respective rights incident to that relationship as were pointed out in the case of Earp v. Mid-Continent Pet. Corp., 167 Okl. 86, 27 P.2d 855, 91 A.L.R. 188. The fallacy in such argument arises by reason of the fact that the Earp case arose prior to the enactment of the forced pooling statute with which we are here dealing, 52 O.S.1951 § 87.1(d) and of the further fact that the conclusion in the Amis case is being misconstrued. The conclusion there reached is expressed by the following paragraph taken from the body thereof to wit [185 Okl. 206, 90 P.2d 939]:

"Here the city created the relationship as it now exists between the parties. Had it not been for the zoning ordinance none of the lot owners would have held an interest in the oil and gas rights beneath the lots of the others. The relationship in the nature of a tenancy in common resulted merely as an incident to the application of the city's police powers. The tenancy owes its existence to those powers and is entirely subject thereto. The parties cannot successfully assert their common law rights as tenants in common, for such a tenancy actually does not exist."

The direct conflict between the quoted rule and the contention of Wakefield becomes readily apparent when the latter is stripped of all excess verbiage and stated simply and concisely. Such contention is that, when the Commission unitizes the mineral estates under two tracts of realty owned in severalty, the owners of the several tracts become co-tenants and invested with the right to proceed in partition to

destroy the unit and restore ownership in severalty. Then to avoid such an absurd conclusion, it is, in effect, argued that the partition proceeding should culminate in forced sale of the mineral estates, striking down the primary object of such a proceeding; i. e., conversion of joint ownership of the whole to ownership of respective parts in severalty. Following the reasoning another step, we would by adopting it have a forced buy-or-sell situation instead of a develop-or-sell situation as the act now provides. But, since "the tenancy owes its existence to those powers [police powers] and is entirely subject thereto", Amis v. Bryan Pet. Corp., supra, the proposition resolves itself into one of wisdom of the legislation, a subject beyond the jurisdiction of this court.

 In the light of this explanation and in harmony with the former opinions of this court, as hereinabove cited, we conclude that 52 O.S.1951 § 87.1(d) is not unconstitutional but is a proper exercise of the police power and that, thereby,

"The Corporation Commission is authorized to fix the proportionate part of the cost of drilling and completing an oil and gas well to be paid by an owner of an undivided part interest in the leasehold estate in a drilling unit and order such owner to elect to pay the same or to accept a fixed sum per acre as a bonus for a lease and to further order that, if the election is not made within a fixed time, it be presumed that he has elected to take the bonus for a lease." Anderson v. Oklahoma Corp. Comm., Okl., —— P.2d ——.

The next proposition, here presented by Wakefield, is stated in his brief as follows:

"If the forced pooling statute (52 Okla.Stat.Ann. Sec. 87.1(d) empowers the Corporation Commission to authorize a non-assenting lease owner to ride the well down and have the operator of the well recover the cost attributable to the non-drilling interest from production, with a penalty, then the refusal of the Corporation Commission in

Order No. 30448 to grant Wakefield the privilege of riding the well down and have his proportionate part of the cost thereof, with a penalty, repaid out of production, is unjust and unreasonable, and denies him the equal protection of the Law."

 For all practical purposes, the order herein involved was the same as that in the case of Superior Oil Co. v. Oklahoma Corp. Comm., 206 Okla. 213, 242 P. 2d 454, 457, wherein it was pointed out,

"We have held that where the Commission's order is supported by substantial evidence its order must be sustained. In re Lovell-Crescent Field [Logan County], 198 Okl. 284, 178 P. 2d 876; Peppers Refining Co. v. Corporation Commission, 198 Okl. 451, 179 P.2d 899."

Plaintiff specifically complains of certain findings made by the Commission, simultaneously with the order above quoted, to the effect that plaintiff was financially able to pay his proportionate part of the drilling expense. He contends that financial condition of the parties was considered as an element determining the issues. Our interpretation of the finding is that the Commission was considering whether or not the order would be a virtual confiscation of plaintiff's property or would work an undue hardship; and whether or not an exception should be made to allow plaintiff an additional alternative of riding the well down and paying 150% of his proportionate part of the expense from production. If, in other cases, the Commission has used financial condition as a basis for making exceptions to its customary forced pooling orders none of such cases has reached this court. No exception was here made and, for that reason, we need not determine the authority of the Commission in that regard. As pointed out above, it was held in the Anderson case and the Superior Oil Co. case that the Commission is empowered and authorized to make an order such as was herein made. For that reason and because the statute is relatively complete, the opin-

ion in the case of H. F. Wilcox Oil & Gas Co. v. State, 162 Okl. 89, 19 P.2d 347, 86 A.L.R. 421, is not applicable to the issues here presented.

The record discloses substantial evidence supporting the values fixed by the Commission in its pooling order. It must be borne in mind that, although there were several potential producing structures underlying the lands here affected, the order gave to the Texas Co. the permission necessary for development and production from only one of them—the Morrow Sand —and that was the only one to be covered by the lease of Wakefield if he chose that alternative instead of participating in the working interest in the well. From an undertone in the evidence it is indicated that this controversy arose, not so much because of the provisions of the order, but primarily because Texas Co. was not employing Wakefield to drill the well. They had previously developed other jointly owned drilling units without friction but, on each, the well had been drilled by Wakefield.

Be that as it may,

"The Corporation Commission has a wide discretion in the performance of its statutory duties. We cannot substitute our judgment on disputed questions of fact unless the findings of the commission are not as commanded by the Constitution, supported by the law, and substantial evidence. * * *

"In cases coming before us, we find that the commission's orders have been in the alternative, that is, to make a cash deposit or submit an approved bond to secure the operator in his costs in the drilling operations. Amis v. Bryan Petroleum Corp., 185 Okl. 206, 90 P.2d 936; Denver Producing & Refining Co. v. State, 199 Okl. 60, 182 P.2d 503." Superior Oil Co. v. Corporation Commission, supra.

The affirmance of the order of the Commission has been suspended and when an order requiring payment is entered it should be conditioned upon Wakefield being grant-ed an additional alternative of making a bond for payment of his portion of drilling cost, the same as was required in the Superior case, supra, and it is so ordered.

The order is affirmed.

CORN, V. C. J., and HALLEY, JOHNSON, JACKSON and CARLILE, JJ., concur.

WILLIAMS, J., concurs by reason of stare decisis.

BLACKBIRD, J., dissents.