**SOUTHERN UNION PRODUCTION COMPANY, Appellee,**

v.

**EASON OIL COMPANY, Appellant.**

**No. 47311.**

Court of Appeals of Oklahoma,
Division 1.

July 29, 1975.

Released for Publication by Order of Court of Appeals Sept. 11, 1975.

Brown, Verity, Brown & Baker, by Gordon F. Brown, Oklahoma City, for appellee.

Lytle Soule & Emery by Robert J. Emery, Oklahoma City, for appellant.

REYNOLDS, Judge:

This is an appeal to determine the legal effect and time of termination of the Corporation Commission's pooling order No. 53,163, and the position of the parties after termination.

At the time of the entry of the pooling order, October 25, 1963, the oil and gas leasehold interests in the 640-acre governmental section were held in the following proportions: Southern Union Production Company (hereinafter called "Southern Union"), 402 acres, consisting of the East Half, and the East Half of the Southwest Quarter, of the section; Eason Oil Company (hereinafter called "Eason"), 160 acres, consisting of the Northwest Quarter of the section; and Anadarko Production Company (hereinafter called "Anadarko"), who is not a party to this appeal, 78 acres, consisting of the West Half of the Southwest Quarter of the section.

By order of July 30, 1963, the Commission extended previously established 640-acre drilling and spacing units for the production of gas and gas condensate from the Basal Cherokee Sand to include Section 14 and established that section as one drilling and spacing unit. By order of October 15, 1963, the Commission established 640-acre drilling and spacing units for the production of gas and gas condensate from the Tonkawa, Cottage Grove, Oswego, Chester, and Mississippi formations, with Section 14 as one drilling and spacing unit. *These orders provided the spacing unit bases for the pooling order involved.*

Thereafter, Southern Union filed an application for the pooling of the lessees' interests with respect to the Cherokee Formation (which is another name for the Basal Cherokee Sand) underlying Section 14, and Anadarko filed an application for the pooling of the lessees' interests with respect to the Cherokee, Tonkawa, Cottage Grove, Oswego, Chester, and Mississippi formations underlying Section 14. The applications were combined for hearing, and on October 25, 1963, the Commission entered its Order No. 53,163.

This Commission order gave Eason the option to either join in the drilling of said unit well and pay its proportionate cost of participation in the well, or accept $35.00 cash per acre in lieu of its right to participate in the unit well. Thereafter the unit well was drilled, proved to be non-productive, and on January 8, 1965, Southern Union filed Form No. 1003 (Plugging Record) with the Commission, reflecting that the unit well was non-commercial and that they had experienced no production. On July 13, 1966, one year and six months after the abandonment of the unit well, the Corporation Commission issued Order No. 63,108, deleting Section 14 from 640-acre spacing, and established 80-acre drilling and spacing units for the production of oil and gas from the Basal Cherokee Sand underlying Section 14. September 1, 1966, Eason completed its No. 1 Hedrick Well in the NW/4 of Section 14 as an oil well in the Basal Cherokee Sand formation. February 10, 1972, Southern Union filed this action against Eason in the District Court of Woods County, alleging conversion by Eason of oil and gas allegedly owned by Southern Union as produced from Eason's Lena Hedrick No. 1 well, praying for an accounting, and that Southern Union's title to the oil, gas and other hydrocarbons producible by Eason's Lena Hedrick No. 1 be quieted, and that Southern Union be adjudged to have the sole and exclusive right to develop the Northwest Quarter of Section 14 for the production of oil and gas from the Cherokee formation.

The question presented is whether Southern Union acquired the leasehold interest of Eason by reason of the Corporation Commission's pooling Order No. 53,163.

The trial court found that Eason elected to accept $35.00 per acre bonus ($5,400.00) and that thereby Southern Union acquired the full right to develop Section 14, Township 23 North, Range 13 West, Woods County, Oklahoma in the formations referred to in said order, including the Basal Cherokee formation, and the right to take

all production in the Basal Cherokee formation accruing to Section 14 to the exclusion of Eason, and that said right was never divested from Southern Union, and remained in Southern Union for the life of any oil and gas leases within said drilling and spacing unit. The trial court further ordered and decreed that the right of Southern Union to own the production accruing to said interest was controlled by 12 O.S.1971, § 95, sub-section third, (the 2-year statute), which entitles Southern Union to the value of all production accruing thereto from and after February 10, 1970, less a proportion of the drilling and development costs, and that under the accounting between Plaintiff and Defendant, pursuant to the Stipulation filed herein, Southern Union should have, and was thereby given, a judgment against Eason in the amount of $62,301.15, together with interest thereon at the rate of six per cent (6%) per annum on said sums payable to Southern Union as the same accrues until the date of the judgment, and at the rate of ten per cent (10%) thereafter until paid; and that Southern Union was further given a judgment against Eason for the possession of the personal property and equipment on said lease, and the value of all production produced from said well from and after July 31, 1973, and the costs of this action.

The case was tried to the trial court based upon the following stipulations by Southern Union and Eason, and on the pleadings on file in this action, as follows:

"1. Plaintiff and Defendant are Delaware corporations authorized to do business in the State of Oklahoma and are currently in good standing.

"2. (Deleted.)

"3. That the Corporation Commission of Oklahoma issued Order No. 52584 on July 30, 1963 in Cause CD No. 18602.

"4. That the Corporation Commission of Oklahoma issued Combined Order No. 53163 on October 25, 1963 in Causes CD No. 18872 and 18967.

"5. That Defendant, Eason Oil Company, made no election under the provisions of Order No. 53163 and was, therefore, presumed by operation of law to have elected to accept a bonus consideration of $35.00 per acre as compensation in lieu of Eason Oil Company's right to participate in the working interest in Southern Union's proposed well in the Southwest Quarter of the Northeast Quarter of Section 14, Township 23 North, Range 13 West, Woods County, Oklahoma.

"6. That Plaintiff, Southern Union Production Company, tendered its check in payment of the bonus consideration presumed by operation of law to have been elected by Eason Oil Company in the amount of $5,600 and Eason Oil Company accepted and cashed said check and retained the proceeds thereof.

"7. That Plaintiff, Southern Union Production Company, commenced operations for the drilling of its proposed well, the Southern Union Production Company Hughes No. 1 well, located in the Southwest Quarter of the Northeast Quarter of Section 14–23N–13W, Woods County, Oklahoma, within forty (40) days from the date of Order No. 53163 and continued the drilling thereof with due diligence to completion as a dry hole in the Basal Cherokee Formation.

"8. That by joint operating agreement dated October 21, 1963, Anadarko Production Company agreed to development of the unit by Southern Union Production Company as operator and to participate in the costs and production attributable thereto with the same to be shared in the proportion of 12.1875% by Anadarko Production Company and 87.-8125% by Southern Union Production Company; that this operating agreement provided that all rights, title and interest accruing to Southern Union Production Company and Anadarko Production Company, or either of them, pursuant to Oklahoma Corporation Commission Com-

bined Order No. 53163 would be owned and held solely by Southern Union Production Company with all sums that might become due or payable to Eason Oil Company by reason of such combined order, or any election of Eason Oil Company made pursuant thereto, to be borne and paid solely by Southern Union Production Company; that by reason of such joint operating agreement, Anadarko Production Company did not acquire any interest in Eason Oil Company acreage pursuant to said Commission Order No. 53163.

"9. That the Corporation Commission of Oklahoma on May 17, 1966, issued its Order No. 62532, which Order was subsequently vacated by decision of the Supreme Court of Oklahoma in Case No. 42116.

"10. That Plaintiff Southern Union Production Company's Hughes No. 1 well was reported to the Corporation Commission of Oklahoma as a well capable of producing only from the Oswego Limestone.

"11. That Plaintiff Southern Union Production Company's Hughes No. 1 well was plugged by Plaintiff on January 4, 1965 as incapable of production.

"12. That the Corporation Commission of Oklahoma on July 13, 1966 issued Order No. 63108 in Cause CD No. 24792 deleting Section 14–23N–13W, Woods County, Oklahoma from the purview of previous 640-acre Basal Cherokee spacing orders and establishing 80-acre drilling and spacing units for the production of oil and gas from the Basal Cherokee Formation in said Section 14; that Plaintiff Southern Union Production Company entered an appearance in and was represented by counsel in said Cause CD No. 24792; that Plaintiff Southern Union Production Company did not appeal from said Order No. 63108.

"13. That the oil and gas leases described in paragraph 11 of the Defendant Eason Oil Company's Answer are valid and subsisting oil and gas leases and that Eason Oil Company has never executed an assignment of any interest in said leases in favor of Southern Union Production Company.

"14. That on August 3, 1966, Defendant Eason Oil Company commenced the drilling of its Lena Hedrick No. 1 well in the center of the Northwest Quarter of the Northwest Quarter of Section 14–23N–13W, Woods County, Oklahoma and completed said well as an oil well in the Basal Cherokee Sand Formation common source of supply.

"15. That the Eason Oil Company Lena Hedrick No. 1 well has continuously produced oil from the Basal Cherokee Sand and only from the Basal Cherokee Sand since the completion of said well on September 1, 1966.

"16. That Eason Oil Company's proof would be that Eason Oil Company entered upon the Northwest Quarter of the Northwest Quarter of Section 14–23N–13W, Woods County, Oklahoma and drilled and completed its Lena Hedrick No. 1 well in the good faith belief that it was the owner of all rights under the oil and gas leases referred to in paragraph 11 of Defendant's Answer and in the good faith belief Eason Oil Company was entitled as the sole party in interest under said leases to explore for and produce the oil underlying the Northwest Quarter of said Section 14 and that Eason Oil Company shall not be required to make such proof by testimony.

"17. That Eason Oil Company has accounted to its royalty owners in the Northwest Quarter of Section 14–23N–13W, Woods County, Oklahoma for all royalty due under its leases from production from the Lena Hedrick No. 1 well.

"18. That on July 13, 1966, the Corporation Commission of Oklahoma issued Order No. 63106 in Cause CD No. 24773 denying Plaintiff Southern Union Production Company's application for the creation of a 480-acre unit composed of the West Half and the Southeast Quar-

ter of Section 14–23N–13W, Woods County, Oklahoma.

"19. That the development (including drilling) and leasehold costs (excluding amount of bonus paid Eason by Southern Union Production Company under Order No. 53163) for the Lena Hedrick No. 1 well are $45,730.49 and the costs of equipment for said well are $21,282.52 as of 31 March 1973; that the operating expenses from inception through 31 March 1973 for said well are $48,910.81; that the proceeds of oil and gas sales from said well from inception through 31 March 1973 are $375,657.42; and that the excess of operating profit over investment for said well from inception through 31 March 1973 is the sum of $259,733.60."

Eason appealed, alleging error:

"PROPOSITION I. The forced pooling order in this case deals with a well and with rights to produce from that well.

"PROPOSITION II. A forced pooling order must rest on a valid spacing order, and where the spacing order has been abolished, abrogated or repealed, the pooling order, and the interest created thereby, will necessarily fall."

Southern Union appealed on the following proposition of error:

"The correct Statute of Limitations to be applied for the wrongful occupation of an oil and gas leasehold estate is the value of the oil and gas so produced during such occupation, not exceeding six (6) years next preceding the commencement of the action."

The statutory provisions of 52 O.S.1971, § 87.1(d), more specifically the following portion, reads:

"When two (2) or more separately owned tracts of land are embraced within an established spacing unit, or where there are undivided interests separately owned, or both such separately owned tracts and undivided interests embraced *within such established spacing unit*, the owners thereof may validly pool their interests and develop their lands as a unit. Where, however, such owners have not agreed to pool their interests and where one such separate owner has drilled or proposes to drill a well on said unit to the common source of supply, the Commission, to avoid the drilling of unnecessary wells, or to protect correlative rights, shall, upon a proper application therefor and a hearing thereon, require such owners to pool and develop their lands in the spacing unit as a unit. . . ." (Emphasis added.)

The Supreme Court held in *Helmerich & Payne, Inc., et al. v. The Corporation Commission of the State of Oklahoma and LVO Corporation*, Okl., 532 P.2d 419 (1975):

". . . At the risk of oversimplification, it is the separate or undivided ownership and common right to drill that is the 'matrix or glue' of the designated drilling and spacing unit. When the statute says the Commission shall require the owners 'to pool and develop in the spacing unit as a unit' it is limiting pooling within the designated drilling and spacing unit of 640 acres. Further limitation exists in the statute when it provides regulation of separate ownership 'embraced within an established spacing unit' or 'where undivided interests (are) separately owned' or both conditions exist;—'*within such established spacing unit.*'" (Emphasis added.)

We therefore conclude that combined Order No. 53163 by its language, specifically pooled Eason's interest in the spacing unit, as to the unit well, which Southern Union drilled, plugged and abandoned. The Corporation Commission issued Order No. 63108 that terminated Order No. 53163 and deleted Section 14, Township 23 North, Range 13 West, Woods County, Oklahoma from a 640-acre drilling and spacing unit and established an 80-acre drilling and spacing unit. Eason's leases were valid and subsisting by reason that

Eason had paid delay rental after the unit well was dry and abandoned.

The Commission did not order a conveyance of Eason's leases to Southern Union, but in paragraph 3 of the Combined Order No. 53163 it ordered:

". . .; that in the event Eason Oil Company does not desire to participate in the Working Interest in said well, it shall be paid the sum of $35.00 per acre as compensation in lieu thereof."

■ Eason never executed an assignment of its leases to Southern Union. By reason of the wording of Order No. 53163, we conclude when Eason accepted the bonus consideration it was compensation in lieu of its right to participate in the working interest in the unit well, and when the unit well was plugged and abandoned as a dry hole the interest created by Order No. 53163 was terminated.

■ In view of the court's holding in *Helmerich & Payne, Inc., et al. v. The Corporation Commission et al.,* supra, that a spacing order is a condition precedent to a forced pooling order, the effectiveness of the pooling order (No. 53163) was gone when its basic spacing order had been abrogated by the establishment of an 80-acre drilling and spacing unit (No. 63108).

It is Southern Union's contention that by drilling the unit well and by the payment of the $35.00 per acre, they acquired Eason's rights in and to the Cherokee formation for a period at least so long as Ea-son's present oil and gas leases were in force and effect.

Southern Union cites *Superior Oil Company v. Oklahoma Corporation Commission,* 206 Okl. 213, 242 P.2d 454 (1952); *Wakefield v. State,* 306 P.2d 305 (Okl. 1957), and other cases as authority for this position. In those cases, the Commission's orders required the party being force pooled to participate in the well or accept a cash bonus *for their lease.* Order Number 53,163 requires Eason either to participate in the unit well and pay its proportionate share of the costs, or accept $35.00 per acre *in lieu of the right to participate in the working interest in the unit well.* When the unit well was plugged and abandoned, Eason was in the same legal position in relation to its lease as it would have been if no forced pooling order had been issued. Eason therefore, had a right and a duty to develop the Northwest Quarter of Section 14.

The trial court's decision is reversed. For that reason, we do not find it necessary to pass upon Southern Union's proposition as to the correct statute of limitations.

It is the order of this Court that the judgment of the trial court be set aside, and the trial court is ordered to enter judgment for Eason Oil Company.

Reversed.

ROMANG, P. J., and BOX, J., concur.