THORNBURGH et al. v. COLE et al.

No. 33382. July 12, 1949.

*207 P. 2d 1096.*

Robt. R. Smith and M. A. Dennis, both of Okmulgee, for plaintiffs in error.

Carland Smith, of Okmulgee, for defendants in error John T. Cole and Adelaide M. Cole.

610

HALLEY, J. On April 24, 1945, Mary Thornburgh King and Mac Thornburgh instituted this action in the district court of Okmulgee county against Ben Hur Coal Company, a corporation, and John T. Cole and wife, Adelaide M. Cole, seeking to cancel certain coal mining leases and an overriding royalty contract between defendants, and for damages alleged to have been suffered by them by reason of the overriding royalty contract between the defendants.

Judgment was rendered for the defendants, except that it provided that the coal mining leases would be canceled unless the defendant, Ben Hur Coal Company, began the production of coal on the leases within ninety days from the date of the judgment. This condition appears to have been complied with and the Ben Hur Coal Company has abandoned its appeal, and the plaintiffs have abandoned their claim for damages. This leaves for determination by this court the question of whether or not the trial court erred in refusing to cancel the overriding royalty contract between Ben Hur Coal Company and John T. Cole and Adelaide M. Cole. The plaintiffs were not parties to this contract, but claim that it seriously affects their interest and is in violation of the agreement made by them when, in 1928, they assigned an interest in and to the royalties due and to be paid under any oil, gas or mineral lease now on or hereafter placed on said land, covered by the assignment, to Thomas G. Thornburgh, the remote assignor of the defendants. The parties will be referred to as they appeared in the trial court.

In order to clearly understand the issues presented, it will be necessary to review briefly the history of the transactions which preceded the filing of this suit.

In 1929, the plaintiffs, as lessors, executed to Crowe Coal Company, as lessee, a coal mining lease covering some 1,200 acres of land, for a primary term of 15 years, and as long thereafter as coal was mined, providing for a royalty of eight cents per ton. Thereafter, the Crowe Coal Company assigned part of the lease to Girdwood Coal Company, which assigned some portions to Ben Hur Coal Company, and, in 1938, other portions to John T. Cole, who assigned certain portions to Ben Hur Coal Company. The assignments from Cole to Ben Hur Coal Company reserved to the assignor an overriding royalty of two cents per ton.

In 1942, John T. Cole purchased from Helen Thornburgh O'Brian, grantee of Thomas George Thornburgh, a one-third "non-participating" royalty interest in several tracts of land, some of which Cole had acquired by assignment in 1938, and which were covered by the coal lease above mentioned. In these tracts Cole reserved to himself a two cents overriding royalty interest at the time he assigned to Ben Hur Coal Company. The "non-participating" royalty interest acquired by Cole in 1942 originated by royalty deeds executed originally by plaintiffs to Thomas George Thornburgh, who assigned to Cole. Each of the royalty deeds executed by the plaintiffs, conveying what is referred to as "non-participating" royalty, contained the following restrictive provision:

"It being expressly understood that the grantors herein have the exclusive right to execute any leases of oil, gas, or other minerals in and under said land, under such terms and conditions as they desire, and said grantors shall retain all of any bonus received by them for the execution of any lease thereon. . . ."

In 1944, Ben Hur Coal Company desired a coal mining lease on certain land owned by John T. Cole, and not involved herein, and in which plaintiffs had no interest. As a part of the consideration for this lease on lands not involved herein, John T. Cole required that the Ben Hur Coal Company protect his overriding royalty interest in

the lands involved herein, which might be lost to him should Ben Hur Coal Company cancel the old lease and take a new lease from plaintiffs, who owned the exclusive leasing rights, thus wiping out the two cents per ton overriding royalty interest provided for in the assignment by Cole to the Ben Hur Coal Company of leases covering the Thornburgh land.

For the apparent purpose of protecting his overriding royalty interest, on September 1, 1944, John T. Cole entered into a written agreement with Ben Hur Coal Company, which provided that his two cents per ton overriding royalty interest would continue under existing leases, and also under any extension, renewal or modification of existing leases. This is the agreement complained of by the plaintiffs. A witness for the Ben Hur Coal Company testified that to comply with this agreement in taking a lease from plaintiffs on unmined land, and paying the customary ten cents per ton royalty, the lessee would be compelled to pay two cents per ton more than the usual royalty.

The term "overriding royalty" has been defined many times in oil and gas leases. In Knight v. Chicago Corporation (Tex. Civ. App.), 183 S.W. 2d 666, reaffirmed in 1945, 188 S. W. 2d 564, it is defined as follows:

" . . . An overriding royalty is a certain percentage of the working interest which as between the lessee and assignee is not charged with the cost of development or production . . . ."

In La Laguna Rance Co. v. Dodge, 114 P. 2d 351, 135 A.L.R. 546, the Supreme Court of California said:

" . . . The term 'over-riding royalty' is applied generally in the industry to such fractional interests in the production of oil and gas as are created from the lessee's estate. This is true whether the overriding royalty is created by reservation when the original lessee transfers his interest by a sublease or whether it is created by grant when the original lessee conveys a fractional share to a third person, as in the instant case."

These definitions are fully applicable to the term "overriding royalty" when used with respect to a coal mining lease, and illustrate the fact that such an interest "overrides" or is in addition to the royalty reserved to the landowner or lessor, and generally arises through contracts between the lessee and a third person, whereby the owner and holder of the 7/8ths working interest provided to the lessee, contracts and agrees that some specified portion of his interest in production shall be paid to a third party, for such consideration as is agreed upon. The lessor, or party receiving the usual royalty provided for in the lease contract, having generally no interest in the working interest, is not a party to such contracts.

The applicable portion of the September 1, 1944, agreement between Ben Hur Coal Company and John T. Cole, and complained of by the plaintiffs, is as follows:

"It is agreed and hereby stipulated, the two cents (2c) per ton override royalty, required to be paid under the terms of the sublease on all coal mined from the herein described property, shall be paid to John T. Cole, his heirs and assigns, regardless of the cancellation of the original Thornburgh lease, provided the coal is marketed, mined, or in some manner handled by the Ben Hur Coal Company, or its assigns, or some person or company associated with or affiliated with it.

"If the Ben Hur Coal Company is unable to comply with the requirements of the original Thornburgh lease, or for any reason the lease should be cancelled, released, or expire by its own terms, and a new lease is acquired by Ben Hur Coal Company, its successors or assigns, or any person or company associated or affiliated with it, the override royalty of two cents (2c) per ton shall apply on the tonnage mined under the new lease, as it applies under the present sublease, regardless of the roy-

alty rate provided for, in any new lease or new leases so acquired."

It is also provided that the "nonparticipating" royalty interest owned by John T. Cole shall be recognized and considered and paid in addition to the two cents overriding royalty, the "nonparticipating" interest having been acquired subject to the above mentioned reservation made by plaintiffs in 1928, whereby they reserved the exclusive right to lease and receive all bonuses except the ordinary royalty payments accruing from actual production. These are the principal provisions complained of by the plaintiffs.

Plaintiffs contend that the court erred in not holding that the overriding royalty contract between Ben Hur Coal Company and John T. Cole constitutes a cloud upon the title of plaintiffs in the coal rights owned by them, because it depreciates their value, and that the two cents overriding royalty provision is in violation of the restrictive clause of the original agreement, reserving to themselves the right to lease, collect and receive any bonus or other consideration except royalty paid for actual production. It is obvious that plaintiffs will suffer no injury to their property rights so long as the present leases exist, but the overriding royalty contract above quoted from provides that it shall apply to future leases.

Let us assume that existing leases expire or are canceled. Plaintiffs, having the exclusive right to lease and receive any bonuses paid, would be compelled to offer a lease for sale to Ben Hur Coal Company, burdened with an overriding royalty of two cents per ton, and it is only reasonable to assume that the lessee might not be willing to pay the customary ten cents per ton to the plaintiffs as lessors, knowing that they would have to pay two cents additional to John T. Cole, or a total of twelve cents per ton. This situation constitutes one of the principal reasons advanced by plaintiffs why the overriding royalty contract should be canceled.

May an overriding royalty contract be made to apply to future leases? The contract here under consideration is clearly applicable only to future leases to Ben Hur Coal Company, its successors, affiliates and assigns. Could it be lawfully applicable to future leases to any and all lessees? Plaintiffs state in their brief that they have found no decision by this court bearing directly upon the questions here involved. In the case of Hivick v. Urschel et al., 171 Okla. 17, 40 P. 2d 1077, this court had under consideration the following state of facts: Hivick had assigned to T. B. Slick a number of oil and gas leases. A large part of the consideration was to be paid from the proceeds of oil produced, one-half of the first oil produced to be applied to such consideration until fully paid. It was also provided that T. B. Slick might reassign to Hivick, or might release after thirty days' notice of such intention. T. B. Slick failed to give the notice provided for, but released and took a new lease, from which large production was obtained. The court held that the overriding royalty agreement might be impressed upon the new lease until the full consideration agreed upon therein was paid.

In Probst v. Hughes et al., 143 Okla. 11, 286 P. 875, 69 A.L.R. 929, the owner of a lease made an assignment thereof, but reserved to himself an overriding royalty, and provided that such reservation should apply " . . . to all modifications, renewals of such lease, or extensions that the assignee, his successors, or assigns may secure." A gas well drilled by the assignee produced for some time, but later ceased to produce. The assignee and those owning with him secured a new lease, and the court held that the new lease constituted a renewal or extension within the meaning of the agreement, and was thus subject to the overriding royalty agreement.

In Summers Oil and Gas, vol. 3, p. 321, it is said:

" . . . But where the assignment of a lease expressly provided that the res-

ervation of an overriding royalty should apply to extensions, renewals or modifications of the lease that the assignee or his successors might secure, it was held that such provision created a relation of trust and confidence between the assignor and his assignees permitting the assignor to payment of the overriding royalty reserved in the assignment out of oil and gas produced under the second lease. . . ."

In the La Laguna Ranch Co. v. Dodge case, supra, the lease provided that the lessee might surrender the lease by quitclaiming to the lessor. This was done and the overriding royalty interest was thus extinguished, because the agreement did not provide that the overriding royalty should apply to renewal, extension or modification of the lease.

We can find no merit in the contention that the overriding royalty interest of the defendants was extinguished by the acquisition by them of what is termed a "nonparticipating" royalty interest. Neither can we find any violation of the plaintiffs' restrictive clause as set out in their original 1928 agreement, and partly quoted herein, and the agreement of John T. Cole and Ben Hur Coal Company of September 1, 1944, providing for two cents overriding royalty on existing and future leases.

Under the 1928 "restrictive clause", vesting certain rights in plaintiffs, it is expressly provided that they may execute any lease they desire. The overriding royalty contract between defendants puts no burden upon the leasing powers and rights of plaintiffs in the future, except future leases to Ben Hur Coal Company, its assigns and affiliates. It does not attempt to provide to whom plaintiffs may lease in the future. They may lease to whom they please. If the contract of the defendants undertook to cover or affect future leases to others than the Ben Hur Coal Company, such effort would be a nullity. The evidence shows that there are other coal companies operating in the area where the Thornburgh leases are located. A future lease to any of them would not be burdened in the least by the overriding royalty contract complained of.

We conclude that the trial court held correctly that the overriding royalty contract was a valid contract, and that it did not violate the original restrictive contract of the plaintiffs. The judgment of the court is supported by the clear weight of the evidence.

Affirmed.

DAVISON, C.J., and CORN, LUTTRELL, GIBSON, JOHNSON, and O'NEAL, JJ., concur.