HAWTHORNE, Justice
(dissenting).
I take issue most vigorously with the implication in the majority opinion that the basis of the decision on rehearing is a rejection of - this court’s conclusion as to a contention made on original hearing. The argument was not made on original hearing or on rehearing that the obligation in the transfer from Mirandona and Chauvin to Montagnet was one which, because of its nature, woiild not be binding on sublessees. No contention has ever been advanced by defendant that this royalty obligation was a personal obligation rather than a real one, and a cursory study of the jurisprudence and the legislative enactments will show that no such proposition could have been successfully urged. The matter is now so well settled that diligent and industrious counsel for the defendant; did not expend their time and effort arguing such a matter.
The most careful and thorough consideration was given on first hearing to each argument advanced by defendant to avoid liability under the royalty reservation in dispute. Some of the arguments may have been given more consideration and more careful answering than was warranted on the basis of their merit and strength. ' The resulting lengthy and exhaustive opinion on original hearing was due to the fact that some members of the court felt that the equities of the case *662 were with the defendant, as demonstrated by the content of the dissenting opinions filed to the original opinion, and the varied grounds upon which they were based. This feeling in regard to the equities of the case may be the explanation of why the decision was reversed. I cannot agree, however, with the reasoning of the majority opinion, which I deem to be unsound, or with its disregard of established law. I must therefore respectfully dissent.
As pointed out in the original opinion, I am convinced that the equities of this case are entirely with the plaintiffs, and in this connection it is interesting to note that courts of other jurisdictions have felt strongly that the equities in such a case as this are not with the defendant but with the overriding royalty owner. See Oldland v. Gray, 10 Cir., 179 F.2d 408; Kennedy v. Seaboard Oil Co. of Delaware, D.C.Cal., 99 F.Supp. 730; Probst v. Hughes, 143 Okl. 11, 286 P. 875, 69 A.L. R. 929; Thornburgh v. Cole, 201 Okl. 609, 207 P.2d 1096; see also 3 Summers, Oil and Gas, sec. 554, at p. 320, 1953-54 Supp. p. 103; Glassmire, Oil and Gas Leases and Royalties, sec. 64, at p. 240. They have recognized that, because the overriding royalty interest is dependent upon a lease for its existence, it is possible for a lessee by inequitable and unconscionable action to destroy, wipe out, or, in the vernacular, “wash out” the overriding royalty interest. The courts have taken the view therefore that the equities are with the one whose interest can be defeated by the will of another. In the Kennedy case, supra, decided in 1951, it was recognized that the courts will go far to protect a person having a reserved royalty interest from the inequitable conduct of an assignee or grantee. In that case the court held that a stipulation in connection with the reservation of an overriding royalty that it would “run with the land” had the same effect as if it had provided that it would apply to all extensions, renewals, or modifications of the lease, and that the transfer of the operational rights to an association organized to operate the oil lands in the area under an agreement to eliminate wasteful competitive practices did not defeat the royalty.
My disagreement with the majority opinion, however, is not on the question of where the equities lie, but with its disregard of settled legal principles and with the doubt, questions, and inconsistencies it will cause in the oil and gas law of this state. The development, progress, and prosperity of the oil industry is dependent upon lease, mineral, and royalty interests being real interests and not merely personal ones so that the parol evidence rule and the laws o'f recordation will be applicable to them. Until this decision it was apparently unquestioned that royalty payable under a lease, a lessor’s or sublessor’s royalty, is a real interest and a real obligation.
*664 Whether the analogy is right or wrong, it is now well settled that royalty under a mineral lease is rent. See Shell Petroleum Corporation v. Calcasieu Real Estate & Oil Co., 185 La. 751, 170 So. 785, and authorities therein cited; Daggett on Mineral Rights (rev’d ed.), sec. 52, p. 256. In Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 48, 82 A.L.R. 1264, it was recognized that an obligation to pay an overriding royalty is an obligation to pay rent. There the court said: “The .reason why an obligation to pay an overriding royalty, or excess royalty, in a transfer of a lease, either in whole or in part, and even though ,the transaction be called an assignment or sale of the lease, characterizes the transaction as a sublease, and not merely an assignment, is that, in oil and gas leases, under the settled jurisprudence of this state, the payment of a royalty is the payment of rent * * In Bond v. Midstates Oil Corp., 219 La. 415, 53 So.2d 149, 154, it was held that an overriding royalty was rent notwithstanding that it •was to be payable also under future leases. In that case the question of whether the whole of a lease had been kept alive by development of a part of it depended upon whether a transfer of a part of the lease had been a sublease or an assignment. •Those contending that the transfer was an assignment argued that a reservation of an overriding royalty by the lessee in the transfer was not in the nature of rent but was a part of the purchase price because it was to remain in effect, not only for the duration of that lease, but also under any extensions or renewals. This court said in answer to that contention: “We are of the opinion that the payment of the %2 overriding royalty * * * so long as the lease remains in force is in the nature of rent, under the jurisprudence of this State, and the fact that it may continue to be paid under any future leases would not change its nature(Italics mine.)
In United Gas Public Service Co. v. Barrett, La.App., 179 So. 506, the court held that a transfer of rent royalty, or royalty due under a lease, is a real obligation that passes with the land. The question in that case was whether the transfer by a lessor of a part of his royalty, when duly recorded in the conveyance records, was binding on the owners of minerals acquired subsequently to the recordation of the transfer. The court reasoned that royalty payable under a mineral lease is rent, that under Article 2017 of the Civil Code a rent charge on immovable property forms a real obligation which passes with the land, and that therefore the transfer of a part of the rents to become due was a rent charge imposed on immovable property, and that, when it was recorded, it was notice to the public so that all subsequent purchasers of mineral rights took them subject to the recorded transfer. A writ of certiorari or review was refused by this court, and the decision has never been questioned. The conflict and inconsistency of the foregoing juris *666 prudence with the opinion in this case is immediately apparent. If an overriding royalty which is to continue to be paid under future leases is rent under the Bond case, supra, and a transfer of a portion of rent or royalty under a lease is a real obligation running with the land under the Barrett case, this decision that an overriding royalty obligation which is to apply to future leases is a personal one cannot stand.
Any doubt that an overriding royalty which is to continue under future leases is a real obligation one would have thought’ was settled by the case of Wier v. Glassell, 216 La. 828, 44 So.2d 882, decided by this court in 1950. This decision overrules that case without mentioning it. The defendant discusses the case in his brief, but does not urge or even suggest that the court should overrule it. The court makes no explanation whatever as to why it has changed its views as to the nature of the obligation or, for that matter, does not explain the basis for its conclusion that the obligation is a personal one. The wisdom of what we said in Roberson v. Pioneer Gas Co., supra, has been recognized several times by this court, and is peculiarly applicable here: “* * * The decisions of the highest court of a state, on the subject of oil and gas leases, or mineral rights, establish rules of property; and they should not be reversed, even though a contrary rule might be deemed more logical, unless it be by an act of the Legislature. * * * ”
In Wier v. Glassell, supra, the litigants were a sublessor and his sublessee. Wier had transferred several leases to Glassell, reserving an overriding jd6th royalty. Before the leases expired Glassell obtained new leases, and after the leases expired oil was produced under the new leases. Wier had not exacted the covenant that Mirandona and Chauvin placed in their transfer, but he nevertheless contended that his royalty applied to the new leases because (1) the language of the instruments of transfer as a whole showed such intent, (2) the contracts were entered into in the light of the custom and practice of the oil business, under which it was recognized that an assignor retains the ownership of the reserved royalty in the property affected not only under the lease assigned but under any subsequent lease of the property taken by the assignee, and (3) there was a fiduciary relationship. The court found that the language of the instruments did not sustain the first contention and disposed of the second contention as follows [216 La. 828, 44 So.2d 888]: “The view wé take of the language and meaning of the agreements themselves under which plaintiff assigned the lease and of their nature, makes it easy for us to dispose of plaintiff’s contention regarding the custom, usage and practice that prevails in the oil business, in the light of which he alleges that he and- the defend *668 ant "entered into these contracts. * * * the royalty interests which plaintiff is seeking to have himself recognized as the owner of, being an incorporeal immovable, and being in writing, all as heretofore .pointed out, it is clear that parol evidence would not be admissible to show that the parties intended to contract with reference to future leases as well as the leases that were being assigned, nor, indeed, with regard to any other intention than the one expressed in the contracts of assignment themselves. To permit parol evidence of the nature such as plaintiff would want to elicit under the allegations of his petition would be to permit him to prove title to an incorporeal immovable by parol and this he could not do in view of the specific provisions of Articles 2275 and 2276 of the Civil .Code.” (Italics mine.) If a covenant with reference to future leases is only a personal obligation, the court was wrong in that case, and the plaintiff there should have been permitted to establish by parol that the parties intended to contract with reference to future leases.
I am of the opinion that we were correct in the Wier v. Glassell case, and that decision that an overriding royalty interest is an incorporeal immovable is in accord with the view in other jurisdictions. Emerson v. Little Six Oil Co., 5 Cir., 3 F.2d 265; Phillips Petroleum Co. v. Taylor, 5 Cir., 116 F.2d 994; Phillips v. Bruce, 41 Cal.App.2d 404, 106 P.2d 922; La Laguna Ranch Co. v. Dodge, 18 Cal.2d 132, 114 P.2d 351, 135 A.L.R. 546; see Thornton, Oil and Gas (5th ed.), sec. 364, p. 646; Levy, Oil Royalties, A Distinct Species of Property, 11 So.Cal.L.Rev. 319, 327.
The holding in this case that the royalty obligation as it applied to future leases was a personal one only is also contrary to the legislative enactments on the subject. In 1938 the Legislature provided: “Oil, gas and other mineral leases, and contracts applying to and affecting such leases or the right to reduce oil, gas or other minerals to possession, together with the rights, privileges and obligations resulting or flowing therefrom, are hereby defined and classified as real rights and incorporeal immovable property, and may be asserted^ protected and defended in the same manner as may be the ownership or possession of other immovable property by the holder of such rights, without the concurrence, joinder or consent of the landowner, and without impairment of rights of warranty, in any action or by any procedure available to the owner of immovable property or land.” Act 205 of 1938, R.S. 9:1105. The Legislature by this act evidenced an intent to classify all lease and mineral rights and the contracts affecting them as real rights and incorporeal immovable property. The act was regarded as authority for rejecting parol evidence to prove a contract to purchase oil and gas’ leases, in Davidson v. Midstates Oil Corporation, 1947, 211 La. 882, 31 So.2d 7, and. •for the ’ conclusion “ in Wier v.- Glassell, *670 supra, that assignments and subleases of mineral leases are contracts relating to an incorporeal immovable, “the transfer of which, under Article 2275 of the Civil Code, 'must be in writing’ ”,
The Wier v. Glassell case was decided on February 13, 1950, and on June 30, 1950, the court rendered its decision on rehearing in the case of Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369, in which it held in a four-to-three opinion that a lessee has no substantive real right under Act 205 of 1938 that will permit him to acquire by reliance upon the public records a greater right than his lessor possesses, and that therefore a lessee is bound by prior unrecordecl equities. The court specifically held that the 1938 act was remedial and procedural in character, and had made no substantive changes. To overcome the effect of this decision the Legislature passed Acts 6. and 7 of the Second Extra Session of 1950, R.S. 9:1105, 2721. See .Nabors, The Louisiana Mineral Servitude and Royalty Doctrines: A Report to the Mineral Law Committee of the Louisiana Law Institute, 36 Tulane L.Rev. 303. R.S. 9:1105 shows that it was intended among other things to set at rest forever any question as to the nature of mineral leases and contracts applying to and affecting them, and the decision in the instant case is in direct conflict with that .statute. It specifically provides that it should be substantive as well as procedural, and reads as follows: “Oil, gas, and other mineral leases, and contracts applying to and affecting these leases or the right to reduce oil, gas, or other minerals to possession, together with the rights, privileges, and obligations resulting therefrom, are classified as real rights and incorporeal immovable property. They may be asserted, protected, and defended in the same manner as may be the ownership or possession of other immovable property by the holder of these rights, without the concurrence, joinder, or consent of the landowner, and without impairment of rights of warranty, in any action or by any procedure available to the owner of immovable property or land. The Section shall be considered as substantive as well as procedural so that the owners of oil, gas and other mineral leases and contracts within the purpose of this Section shall have the benefit of all laws relating to the owners of real rights in immovable property or real estate.” Act 7, R.S. 9:2721, is an act relating to the recording laws designed to prevent secret claims or equities and other matters outside the public records from being binding on third parties.
Whether the royalty covenant in this case reserving. an overriding royalty is considered as a contract applying to and affecting a mineral lease or as a part of the lessee’s interest carved out of the lease, it would be an incorporeal immovable under R.S. 9:1105 in either case. This classification would apply to the overriding royalty under the Crowder lease and tinder future leases. The majority opinion *672 leaves in complete doubt the nature of the overriding royalty as limited to the Crowder lease. It does not say that it is a real obligation, nor does it say that it is a personal obligation. The court does recognize, however, that this royalty would be “enforceable as against all assignees and sublessees alike so long as that lease was in esse”. Omitting completely any distinction as to the nature of the two royalty covenants as the basis for this conclusion in regard to the production under the Crowder lease, it says that as limited to the Crowder lease the royalty would have been binding on all subsequent holders of the lease because “the interest they had reserved had been placed of record in the Parish where the land was situated”. This logic, or the lack of it, is not persuasive, and the technique employed is obviously one to avoid explaining why the royalty as applied to the Crowder lease was a real obligation but as applied to future leases it was a personal one only — an explanation which the court, in my opinion, could not make.
If recordation in the parish where the land is situated is what makes a reservation binding on all sublessees, the reservation as applied to future leases was also recorded in this case. It is not the recording, of course, that made the reservation the kind that would be binding on sub-lessees, but, if it was the kind — a real obligation and a contract affecting immovable property — , it had to be recorded to be effective against third parties under Article 2266 of the Civil Code. If it was not a contract affecting immovable property, recordation could not make it binding as a personal obligation on third persons.
The majority opinion serves to confuse the whole field of royalty obligations. If the royalty as applied to future leases was not binding on the sublessee Brown, the royalty as applied to the Crowder lease likewise would not have been binding on him because there is no difference as to the nature of the obligations — the majority opinion has not even attempted to differentiate the two.