**L. S. YOUNGBLOOD and M. L. McLain, Appellants,**

v.

**Hughes SEEWALD, Appellee.**

**No. 6793.**

United States Court of Appeals Tenth Circuit.

Dec. 29, 1961.

Rehearing Denied April 5, 1962.

C. Harold Thweatt, of Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, Oklahoma City, Okl. (George S. Guysi, Oklahoma City, Okl., with him on the brief), for appellants.

Wallace E. Robertson, of Robinson, Robertson & Barnes, Oklahoma City, Okl. (T. Murray Robinson, Oklahoma City, Okl., with him on the brief), for appellee.

Before PICKETT and HILL, Circuit Judges, and CHRISTENSON, District Judge.

PICKETT, Circuit Judge.

This declaratory judgment action was brought by the owners of overriding royalties in the oil and gas production from lands in Cimarron County, Oklahoma, to determine the effect of a pooling order of the Oklahoma Corporation Commission upon their interests. They appeal from a judgment holding that when the plaintiff McLain, the owner of leases within the drilling unit, accepted a ⅛th of ⅞ths royalty in the production, in lieu of participating in the well, he was required to pay from his royalty income all burdens on the leases over and above the statutory ⅛th royalty.

The facts are stipulated. By previous order, the Commission had established each governmental section in the area in question as a drilling unit for the production of natural gas from the Keyes Sand formation. The defendant

Seewald, owned the oil and gas leases covering all of Section 18, Township 4 North, Range 9 ECM, except 64.22 acres, the leases to which were owned by the plaintiff McLain, and 11.66 acres, the lease to which was owned by a company not here involved. McLain's leases were originally acquired by the plaintiff Youngblood subject to a 9/16ths royalty interest to the lessors. Youngblood sold and assigned the leases to McLain, reserving an overriding royalty of ⅛ of ⅞ths of all production of oil and gas which might be obtained pursuant to the terms and provisions of the leases. Seewald was unable to reach an agreement with McLain for the acquisition of the drilling rights owned by him, and, being desirous of drilling a well to explore the gas possibilities under Section 18, filed an application with the Commission for an order pooling the lessee interests. A pooling order was issued, the pertinent portion of which reads:

"1. That the oil and gas leasehold interests in Section 18, Township 4 North, Range 9 ECM, Cimarron County, Oklahoma, are hereby pooled for the production of gas and gas condensate from the Keyes Sand, and Hughes Seewald is hereby permitted and authorized to drill and operate the well on said unit.

"2. That for the purpose of this order the sum of $55,000.00 is fixed as the cost of drilling and completing said well and in the event there is a dispute as to such cost after said well has been completed, the Commission retains jurisdiction of this cause for the purpose of redetermining such cost; that the sum of $50.00 per acre, or an override of ⅛th of ⅞ths, is hereby fixed as a fair

and reasonable bonus to be paid as mineral compensation in lieu of the right to participate in the working interest in said well.

"3. That the owners of the outstanding leasehold and unleased mineral interests in said unit shall be permitted to participate in the working interest in said well by paying their proportionate part of the cost of drilling and completing the same, or furnishing satisfactory evidence for the payment thereof, within 15 days from the date of this order; that in the event such owners do not desire to participate in the working interest of said well, they shall be paid the sum of $50.00 per acre, or an override of ⅛th of ⅞ths, as mineral compensation in lieu thereof."

Of the several options offered in the order, McLain elected to take an overriding royalty of ⅛th of ⅞ths in lieu of his right "to participate in the working interest of" the well.[1]

The authority of the Oklahoma Conservation Commission to control the drilling of a well or wells into a common source of supply for the production of oil and gas from land which has been the subject of a drilling and spacing order is found in 52 Okl.St.Ann. § 87.1(d). The question here arises from the provision of that statute which reads:

" * * * provided, where a lease covering any such separately owned tract or interest included within a spacing unit stipulates a royalty in excess of one-eighth (⅛) of the production, or said lease shall be subject to an overriding royalty, to production payment or other obligation, then the lessee of said lease out of his share of the working interests

---

1. This acceptance was in writing, and reads:

"Before The Corporation Commission Of The State Of Oklahoma In the Matter of the Application of Hughes Seewald for an order pooling the Lessees' interests in Section 18, Township 4 North, Range 9 ECM., in Cimarron County, Oklahoma. Cause CD No. 11, 141

Election Of M. L. McLain To Accept Overriding Royalty In Exchange For His Working Interest.

"Comes now M. L. McLain, pursuant to Order No. 38059 entered in the captioned cause on the 23rd day of October, 1958, and hereby elects to accept an overriding royalty of ⅛th of ⅞ths of all production attributable to the 65 mineral

from the well drilled on said unit, shall sustain and pay said excess royalty, overriding royalty, or production payment, and therefrom meet any other obligation due in respect to the separately owned tract or interest held by him."

Seewald contends that, by virtue of the statute and the pooling order, he acquired the full ⅞ths working interest in the leases formerly owned by Youngblood, subject only to the ⅛th of ⅝ths overriding royalty created when McLain elected to take an overriding royalty rather than participate in the well or accept a cash bonus. The effect of this contention is that when the one designated to drill the well on a drilling unit acquires the working interest on other leases within the unit by virtue of the pooling order, the owners of excess or overriding royalties in those leases must look to the person who owned the leases just prior to the pooling order for payment of their royalties.

The constitutionality of the spacing and drilling provisions of the Oklahoma statutes has been consistently upheld as a proper exercise of the state's police power. Anderson v. Ellison, 10 Cir., 285 F.2d 484; Panhandle Eastern Pipe Line Co. v. Isaacson, 10 Cir., 255 F.2d 669; Anderson v. Corporation Commission, Okl., 327 P.2d 699, appeal dismissed 358 U.S. 642, 79 S.Ct. 536, 3 L.Ed.2d 567; Wakefield v. State, Okl., 306 P.2d 305; Patterson v. Stanolind Oil & Gas Co., 182 Okl. 155, 77 P.2d 83, appeal dismissed 305 U.S. 376, 59 S.Ct. 259, 83 L.Ed. 231. See Anno. 37 A.L.R.2d 434 (1954). The form of the order in question here has also been approved. Anderson v. Corporation Commission, supra; Wakefield v. State, supra.

The trial court reasoned that under the provisions of the foregoing statute all of the burdens against the lease over and above the statutory ⅛th royalty should be the obligations of the owner of the working interest just prior to the

acres covered by the oil and gas leases owned by him in lieu of paying his ratable part of the cost of the proposed well.

time the order was entered, regardless of whether a bonus was accepted in lieu of participation. It is our view that this does not follow. The statute contemplates that the owner of the working interest shall satisfy the burdens, but it does not specify whether the owner should be determined before or after the pooling order. It seems clear that the Commission determined the cost of drilling the well and the value of the working interest for the purpose of giving to McLain the option of participating in the well, by paying his proportionate share of the cost, or accepting the value of his working interest and transferring the same to Seewald. The value of McLain's working interest could not be determined without considering the burdens on the lease. It could well be that without any overriding burdens the value would have been far in excess of the $50.00 per acre or ⅛th of ⅝ths royalty stipulated by the Commission order. When McLain elected to accept the ⅛th of ⅝ths royalty option, in exchange for his working interest, his right to drill on the leases was surrendered, and the working interest became the property of Seewald by operation of law. There is no language in the order which indicates that the Commission intended that the Youngblood royalty and the ⅟₁₆th excess royalty of the lessors should be paid out of the ⅛th overriding royalty accepted by McLain. The result of the trial court's interpretation is that McLain would receive nothing, and he would be unable, out of the ⅛th he accepted, to pay the lessors' excess royalty and Youngblood's override in full.

The Oklahoma Supreme Court considered 52 Okl.St.Ann. § 87.1 in Anderson v. Corporation Commission, supra. The Commission had found that the reasonable value of Anderson's leasehold interest was $800.00 per acre, and ordered that Anderson, who owned the fee to a tract of land in a spacing unit, have the option of participating in the well to be drilled, by payment of his proportionate

"Executed this 3rd day of November, 1958."

share of the cost, or accepting from the operator of the unit $800.00 per acre bonus for his working interest. The effect of this order was to require Anderson to participate in the well or submit to a forced sale of his working interest for a sum found to be reasonable by the Commission. Anderson was in the same position as McLain in this case, except that there were no overriding royalties or other burdens on his interest, and his ultimate situation was the same as though an agreement had been reached between the parties as to the amount to be paid for his working interest. On appeal Anderson contended that the Commission did not have authority to make the order. This contention was rejected, and the order, which limited Anderson to the statutory ⅛th royalty over and above the bonus, was upheld. The effect of the decision is that when the owner of a working interest accepts a bonus fixed by the Commission, rather than electing to participate in the well, his working interest becomes the property of the person authorized to drill and required to pay the bonus.

McLain, as owner of the working interest in the unit, could have retained this interest by paying his proportionate share of the cost of the well. In that event he would have received ⅞ths of the production allotted to his land, and would have been required to pay therefrom the excess royalty and other burdens on the lease. If he did not elect to participate in the well, he had the option of accepting the $50.00 per acre bonus or ⅛ of ⅞ths overriding royalty for his interest. Upon the acceptance of either of these options his working interest became the property of Seewald. The Commission did not attempt to disturb the royalty burden on the leases over and above the statutory ⅛th, and the Oklahoma statute does not require it. But, the construction given the Commission's order by the trial court would exclude McLain from participating in the production, and still, the share he elected to receive would be insufficient to satisfy the remaining overriding burdens. We need not consider whether the Commission has the power to restrict overriding burdens when all the parties are before the Commission. We hold, however, that the Commission did not undertake to disturb the excess royalty of the lessors or the overriding royalty of Youngblood, and these burdens, in addition to the ⅛th of ⅞ths which McLain elected to take for his working interest, must be satisfied by the owner of the working interest, Seewald, who is now the "lessee" referred to in the statutory provision in question.

Reversed and remanded, with instructions to enter judgment in accordance with the views herein expressed.