APPLICANT: American Quasar Petroleum Co.

In the Matter of Pooling Interests and Adjudicating the Rights and Equities of Oil and Gas Owners in the Pennsylvanian, Tonkawa, Cottage Grove, Oswego, Cleveland, Big Lime, Red Fork [Cherokee], Atoka, Morrow, Chester, Mississippian, Hunton, Viola, Simpson, and Arbuckle Common Sources of Supply Underlying all of Section 12, Township 18 North, Range 20 West, Dewey County, Oklahoma.

Joseph I. O'NEILL, Jr.; Howard L. Kennedy and Jacqueline Kennedy, husband and wife; John F. Mitchell and Evelyn Mitchell, husband and wife; and William E. Hulsizer and Phyllis N. Hulsizer, husband and wife, Appellants,

v.

AMERICAN QUASAR PETROLEUM CO., Appellee.

No. 50741.

Supreme Court of Oklahoma.

Jan. 8, 1980.

As Modified Jan. 11, 1980.

Rehearing Denied Oct. 10, 1980.

Guy E. Taylor, Oklahoma City, for appellants.

Watson, McKenzie & Moricoli by H. B. Watson, Jr., Richard K. Books, Oklahoma City, for appellee.

HARGRAVE, Justice:

The appellants, William E. Hulsizer and his wife Phyllis, own an overriding royalty interest in the leasehold of Joseph I. O'Neill, Jr. totaling 1% of ⅜ths in and to 77.31 acres of a 640–acre drilling and spacing unit located in Section 12–18N–20W of Dewey County, Oklahoma. Mr. O'Neill also assigned an override of 1.5625% of all oil and gas produced to appellants Howard L. and Jacqueline Kennedy, which was convertible at the election of the assignees to a 6.25% working interest upon payout of the unit well. An identical override of 1.5625% convertible to a 6.25% working interest at payout was granted to John F. Mitchell and Evelyn Mitchell. Additionally a 5.46875% override was granted by O'Neill to John R. Withrow. Therefore the 77.31 acre leasehold interest owned by O'Neill was burdened by a 9. + % overriding royalty and a contingent interest equal to ⅛th of the leasehold vesting upon payout of a well.

A year and eight months later lessee O'Neill was notified that American Quasar Petroleum Company intended to drill a well on the previously established unit. Thereafter appellee filed its application with the Corporation Commission requesting Section 12 be pooled. The cause was set for hearing and at the day and time appointed for that hearing, appellants' counsel requested a continuance for the purpose of requesting additional evidence. Appellee resisted the continuance on the ground that it was presently awaiting the Commission's order so that they could begin drilling. The hearing was held the afternoon of the originally scheduled day, February 8, 1977, before the Commission en banc. The Commission's order gave any owner of a right to drill on the unit four alternatives. They were: (1) to participate in development by paying a proportionate cost of the well; (2) To receive a cash bonus of $100 per acre and the normal ⅛th royalty interest; (3) To receive $75 per acre bonus and a ¹⁄₁₆th of ⅝th in addition to the normal royalty of ⅛th; or (4) To receive in addition to the normal ⅛th royalty an override of ¹⁄₁₆th of ⅞ths on oil and ⅛th of ⅞ths on natural gas. These alternatives were not given to O'Neill, the Kennedys, the Michells or the Hulsizers and the alternatives allowed these parties were either to participate in the development or to accept the fair share of the production listed in Item (4) above. Upon failure to elect within 20 days the order provided the appellants were deemed to have elected to take the override of ¹⁄₁₆th of ⅞ths oil and ⅛ th of ⅞ths gas in addition to the ⅛th royalty. The last mentioned provision (fair share of production) was accepted reserving the right to appeal.

We reach only the appellants' first proposition of error asserting that the Corporation Commission does not have statutory authority to adjudicate the rights and equities of owners of an overriding royalty interest. 52 O.S.1971, § 87.1(d) [since amended] provides statutory authority for the Commission to force a pooling of separately owned interests in a unit. In pertinent part that statute provides:

> ... Where, however, such owners have not agreed to pool their interests, and where one such separate owner has drilled or proposes to drill a well on said unit to the common source of supply, the Commission, to avoid the drilling of unnecessary wells, or to protect correlative rights, shall, upon a proper application therefor and a hearing thereon, require such *owners to pool and develop* their lands in the spacing unit as a unit. ... (Emphasis supplied.)

The statute gives the Commission the authority to require the owners to pool and develop as a unit. The Corporation Commission is a tribunal of limited jurisdiction and its power is derived from and defined exclusively by the provisions set forth in and necessarily implied by the Statutes of the State of Oklahoma. *Kingwood Oil Co. v. Hall–Jones Oil Co.*, Okl., 396 P.2d 510 (1964). The definition of the term "Owner" is set forth in 52 O.S.1971, § 86.1(d) as follows: "The term 'Owner' shall mean a person who has the right to drill into and to produce from any common source of supply and to appropriate the production, either for himself or for himself and others." Inserting the definition for the word defined, we read the statute to state: Where such persons having the right to drill and produce have not agreed to pool their interests and where one such person having a right to drill into and produce from any common source of supply, has drilled or proposes to drill a well on said unit to the common source of supply, the Commission, to avoid the drilling of unnecessary wells, or to protect correlative rights, shall upon proper application, require such persons having the right to drill or produce, to pool and develop their land in the unit as a unit. The statute therefore authorizes the Commission to pool a party's interest where that party owns a right to drill into and produce from a common source of supply. Does an owner of an overriding royalty interest possess a right to drill or produce? If so, then the above mentioned statute, 52 O.S.1971, § 87.1(d), empowers the Commission to require the owner of the override to pool and develop their land.

■■ The term overriding royalty refers to a percentage carved from the lessee's working interest, free and clear of any expense incident to production and sale of oil and gas produced from the leasehold. *De Mik v. Cargill*, Okl., 485 P.2d 229 (1971), reviewed certain attributes of an overriding royalty interest. The nature of an overriding royalty interest is such that only when oil and gas are reduced to possession does the interest attach. Prior to this event the owner of an override has no assertable right in the leasehold, and the vesting of an overriding royalty owner's rights are dependent upon the happening of a future event or condition. In *Cities Service Oil Co. v. Geolograph Co.*, 208 Okl. 179, 254 P.2d 775 (1953) quoting from *Thornburgh v. Cole*, 201 Okl. 609, 207 P.2d 1096, this Court stated that an overriding royalty is a certain percentage of the working interest which as between the lessee and assignee of the mineral lease is not charged with the cost of development or production. The Court discussed the fact that the term "Overriding royalty" was a term of peculiar significance and common usage in the industry, and when the term was used by those familiar with the industry it "must have been" the purpose of the parties that payments made should be free and clear of all cost and expenses.

■ The owner of an overriding royalty interest has *no* assertable right in the oil and gas leasehold prior to the time when the hydrocarbons are reduced to possession. *De Mik v. Cargill, supra.* This being true, it necessarily follows that the owner of an override has no right to drill and produce from a common source of supply on the unit. Therefore the owner of an override is not an "Owner" as defined by 52 O.S.1971, § 86.1(d). The appellee and the Corporation Commission suggested in the oral presentation of this cause that the Commission's power to require "owners to pool and develop" as specified in 52 O.S.1971 § 87.1(d) is not limited to those classes of owners defined in 52 O.S.1971 § 86.1(d) as those having a right to drill into and produce from a common source by virtue of the second paragraph of 52 O.S.1971 § 87.1(d), wherein it is provided:

For the purpose of this section the owner, or owners, of oil and gas rights in and under *an unleased tract* of land shall be regarded as a lessee to the extent of seven–eighths (⅞) interest and a lessor to the remaining one–eighth (⅛) interest therein. [E.A.]

We cannot conclude that this section implies the power to completely rearrange contractual rights and duties of the owners of all overriding royalty interests in the state by converting their non–participating investment into a working interest where the royalty is in excess of one–eighth. To do so would be a major disruption of the investments made therein and of the industry that created them. Such a profound upheaval is not contemplated by the last–quoted provision. The language quoted simply solved the dilemma in regard to the Commission's power to, in effect, give a forced lease on unleased tracts and indicates the treatment to be given to the interests after that is done. There is no indication in the language quoted which justifies a broader application than in instances where the Commission deals with unleased tracts.

■ The Commission's authority under § 87.1(d) to require owners to pool their interests and contribute to the costs of development and operation, does not authorize the Commission to require owners of an override to contribute as they are, by statute, not owners. This conclusion is confirmed by the fact that no order pooling the royalty interests in a unit is necessary or contemplated by the statute because the creation of a unit, by operation of law, pools royalty interests. The last paragraph of 52 O.S.1971, § 87.1(d) provides:

In the event a producing well, or wells, are completed upon a unit . . . any royalty owner or group of royalty owners holding the royalty interest under a separately owned tract included in such spacing unit *shall* share in the one–eighth (⅛) of all production from the well or wells drilled within the unit, . . . in the

proportion that the acreage of their separately owned tract or interest bears to the entire acreage of the unit; . . . (Emphasis added.)

In contrast to the fact that § 87.1(d) contemplates the pooling of royalty interests by operation of law upon the formation of a unit, the first paragraph of that section of the statute expressly provides that the owners of a right to drill may voluntarily pool their interests or upon proper application the Commission shall require the owners to pool and develop when the owners have not agreed to do so. Thus the creation of a drilling and spacing unit pools royalty interests by operation of law, but working interests are pooled only by voluntary agreement or a separate Commission order. *Whitaker v. Texaco, Inc.*, 283 F.2d 169 (Okl. 10 Cir. 1960). From the preceding discussion we conclude the Corporation Commission is not clothed with authority by virtue of 52 O.S.1971, § 87.1(d) to enter an order such as that before us requiring the owner of an overriding royalty interest within a unit to elect between participation or acceptance of an alternative which disturbs the terms of the grant of the override. Insofar as the order attempts to disturb the rights of the overriding royalty owners under § 87.1(d) the order is erroneous and is reversed.

The Commission's order allowed the lessee, O'Neill, to participate in the development of the well or accept a ⅛th of ⅞ths interest on natural gas and ¹⁄₁₆th of ⅞ths on oil in addition to accepting the normal ⅛th royalty interest in lieu of participation. The paragraph of the order allowing O'Neill that interest also requires the overriding royalty owners (except one omitted royalty owner) to receive their share out of O'Neill's above–mentioned interest, without regard to whether O'Neill chooses to participate or take an interest in lieu thereof. The order clearly provides that the original lessee is to bear all override burdens of the leasehold out of what he receives for his working interest. It appears that in setting O'Neill's royalty the Commission contemplated that the overrides were to come out of O'Neill's interest.

However, the overrides do not come from the original lessee's interest when he chooses not to participate but are attributable to the unit operator. The statute specifies that overriding royalties, production payments, royalties in excess of ⅛th, or other obligations shall be paid by the lessee out of his share of the working interest. The last paragraph of 52 O.S.1971, § 87.1(d) states in part:

. . . [P]rovided, where a lease covering any such separately owned tract or interest included within a spacing unit stipulates a royalty in excess of one–eighth (⅛) of the production, or said lease shall be subject to an overriding royalty, to production payment or other obligation, *then the lessee* of said lease *out of his share* of the *working interests* from the well drilled on said unit, shall sustain and pay said excess royalty, overriding royalty, or production payment, and therefrom meet any other obligation due in respect to the separately owned tract or interest held by him. (Emphasis added.)

These provisions of 52 O.S.1971, § 87.1(d) conflict with the order as written because where O'Neill elects, as he did here, not to participate, he is no longer possessed of a working interest in the unit well. The statute provides the excess royalty is to be paid by the lessee out of his working interest. Under the last quoted statutory provision (52 O.S.1971 § 87.1(d)) when an owner of a working interest elects not to participate in a unit well, electing rather to accept a bonus or royalty in lieu thereof, that working interest becomes the property of a person authorized to drill the well, and that unit operator is required to pay the bonus. *Youngblood v. Seewald*, 299 F.2d 680 (Okl. 10 Cir. 1961). Inasmuch as the order sets the amount of O'Neill's option on the basis that (although not participating) he will stand the override obligations owed the appellants, that portion of the order must be vacated and remanded for a determination of what fair compensation for that working interest is in view of the fact that the unit operator must stand these override obligations in the event O'Neill does not partici-

pate. The order of the Corporation Commission is reversed and remanded for proceedings consistent with the views expressed herein.

If the Commission may not require an override owner to participate in the drilling operation and share the costs thereof, and if, as noted above, the owner of a lease may pass unbearable override burdens to third parties in contemplation of a pooling order which will transfer the burden of satisfying those overrides to the owners of the working interest when the lessee chooses not to participate, it is conceivable that a lessee acting in bad faith might burden a lease to the point it becomes useless. The existence of such a potential problem does not militate, in and of itself, that the Legislature has afforded the Corporation Commission the power to change an overriding royalty into a working interest to alleviate that situation. In our opinion, such power is not clearly indicated by the Legislature, and the effect of such a grant of power on the State, its people and the oil and gas industry in general is a matter to be weighed against the potential abuse in the legislative arena and not in this forum.

The order of the Corporation Commission is reversed.

REVERSED AND REMANDED.

LAVENDER, C. J., and HODGES, SIMMS and DOOLIN, JJ., concur.

IRWIN, V. C. J., and BARNES and OPALA, JJ., concur in part and dissent in part.

WILLIAMS, J., dissents.

IRWIN, Vice Chief Justice, dissenting:

If my calculations are correct, the O'Neill lease was subject to a greater overriding royalty interest than the override of ⅟₁₆th of ⅞ths on natural gas allowed under alternative (4) in the Commission's pooling order. Stated another way, the overriding royalty interest burdens against the O'Neill lease exceeded what the Corporation Commission determined to be the fair and reasonable value of the ⅞ths working interest free and clear of burdens. Therefore, one of the issues presented and one of first impression is: If the burden against a pooled lease (e. g., a ³⁄₁₆ths override) is greater than a fair and reasonable bonus for the ⅞ths working interest (e. g., a bonus of ⅛th override) and if the lessee elects not to participate in the development, does the Corporation Commission have the authority to amend or modify (reduce) the ³⁄₁₆ths override, or must the poolor take the lease subject to the ³⁄₁₆ths override.

In my opinion, the holder of the ³⁄₁₆ths overriding royalty interest may be a proper party in a forced pooling proceeding, and the Commission has the authority to require such holder to make an election concerning how he will participate in the bonus (a ⅛th override) although such bonus would be less than the holder's ³⁄₁₆ths overriding royalty interest. My views are premised upon the following reasons.

I am of the opinion that contractual rights relating to overriding royalty interests, production payments, etc., may be amended and modified to the extent necessary to conform to the requirements of forced pooling under 52 O.S.1971, § 87.1(d).

The right of the Legislature to act under the police power of the State is a part of the existing law at the time of the execution of every contract, and as such becomes in contemplation of law a part of that contract. *Layton v. Pan American Petroleum Corporation*, Okl., 383 P.2d 624 (1963). Since the State has the authority to regulate the production of oil and gas, a private contract in derogation of this authority, must yield to the State's authority. *Patterson v. Stanolind Oil & Gas Co.*, 182 Okl. 155, 77 P.2d 83 (1938). "[A] state has constitutional power to regulate production of oil and gas so as to prevent waste and to secure equitable apportionment among landowners of the migratory gas and oil underlying their land, fairly distributing among them the cost of production and apportionment." *Hunter Co. v. McHugh*, 320 U.S. 220, 64 S.Ct. 19, 88 L.Ed. 5. If a poolor is required to pay a bonus or satisfy a burden in excess of a fair and reasonable bonus for ⅞ths working interest when a

pooled lessee elects not to participate in the development but to accept a bonus, there would be no equitable distribution of the production or fair apportionment of the cost. In my opinion, when a pooled lessee elects not to participate but elects to accept a bonus, the poolor may not be required to pay a bonus or satisfy a burden in excess of the fair and reasonable value of the 7/8ths working interest. If a poolor were required to do so, the authority of the Commission in forced pooling proceedings would be thwarted.

Our decision in *Holmes v. Corporation Commission*, Okl., 466 P.2d 630 (1970) tacitly recognized the above views although the specific issue presented there was the amount of the penalty. In *Holmes*, an oil and gas lessee of the east half of a 640 acre drilling and spacing unit assigned the lease to Holmes (his sister) reserving a $2,000.00 per acre production payment payable out of ½ of 7/8ths of the production. The lessee of the west 320 acres filed an application for pooling. The evidence disclosed that the value of the leasehold estate, from which a $2,000.00 per acre production payment had been reserved, was from $50.00 to $100.00 per acre,[1] and the cost of drilling and completing the well would be approximately $100,000.00.

The Commission entered its pooling order and provided that the protestants (Holmes and her brother) were to elect whether they would participate in the working interest and pay their proportionate share of the cost of development, or not participate in the cost and not receive their share of the 7/8ths working interest until the applicant for the pooling order had recovered 250% of the share of the cost allowable to that interest. It was argued on appeal that the penalty should have been 150% instead of the 250%.

Although the authority of the Commission was not placed in issue, it is evident

that the pooling order in *Holmes* modified the lease contract between Holmes and her brother, and in effect, treated Holmes and her brother as joint owners of the 7/8ths working interest, i. e., the $2,000.00 per acre production payment was not material in determining the value of the lease or the amount of the penalty. Stated in another way, although the $2,000.00 per acre production payment was a burden against the pooled lessee's interest, it was not a burden against the interest of the poolor, the applicant for the pooling order.

In *Youngblood v. Seewald*, 299 F.2d 680 (10th Cir. 1961), a declaratory judgment action was brought to determine the effect of a pooling order of the Oklahoma Corporation Commission. An oil and gas lease owned by McClain was involved. This lease was subject to a 3/16ths royalty interest in favor of the lessors and also an override of 1/8ths of 7/8ths which had been reserved by McClain's assignor. Of the several options offered in the pooling order, McClain elected to take an overriding royalty of 1/8th of 8/8ths in lieu of his right to participate in the working interest. The Commission pooling order did not state who was liable for the additional 1/16th royalty interest in favor of the lessor and the override of 1/8th of 7/8ths in favor of McClain's assignor. The issue presented was whether Seewald, (the poolor) or McClain, (the poolee) was liable for the burden on the lease. The trial court held that when McClain accepted a 1/8th of 8/8ths overriding royalty in lieu of participating in the well, he was required to pay from his royalty income all burdens on the lease over and above the statutory 1/8th royalty.

The Tenth Circuit Court of Appeals said that:

"The value of McClain's working interest could not be determined without considering the burdens on the lease. It

---

1. If the pooled lessee had elected not to participate in the production, and if the $2,000.00 per acre production payment had become the obligation of the poolor, Holmes would have been entitled to receive a $640,000.00 production payment from the production allowable to ½ of 7/8ths of the production in the east 320 acres before poolor would have been entitled to any production or costs allowable to that interest. This $640,000.00 production payment would have been an obligation of poolor, if produced, although the fair and reasonable value of an oil and gas lease on the minerals was from $50.00 to $100.00 per acre.

could well be that without any overriding burdens the value would have been far in excess of * * * ⅛th of ⅝ths royalty * * *. The result of the trial court's interpretation is that McClain would receive nothing, and he would be unable, out of the ⅛th he accepted, to pay the lessor's excess royalty and Youngblood's (McClain's assignor) override in full."

The Court held that since McClain did not elect to participate in the well, his working interest became the property of Seewald, the poolor entity authorized to drill, and that the owner of the working interest (poolor—Seewald) must satisfy the burdens on the lease.

Although it might appear that *Youngblood* stands for the rule that when an owner of a working interest elects to accept a bonus or override instead of participating in the unit well, the unit operator is obligated to satisfy the burdens against the pooled lease from his interest in the production, *Youngblood* will not support such rule. In the first place, *Youngblood* specifically did "not consider whether the Commission has the power to restrict overriding burdens when all the parties are before the Commission". Secondly, the Commission did not attempt to disturb the excess royalty or the overriding royalty. Thirdly, the poolor made no attempt to show that the excess royalty and override and the bonus paid to the pooled lessee was in excess of the fair and reasonable value of the lease.

In my opinion, our pooling statute clearly provides for an equitable distribution of the production and a fair apportionment of the costs, and a lessee whose lease may be pooled, may not burden his lease so that a poolor would be required to pay more than a fair and reasonable bonus for the ⅞ths working interest.

52 O.S.1971, § 87.1(d) speaks directly to the manner in which production is distributed and cost apportioned when owners agree to pooling, or a pooled lessee elects to participate in the development. However, the

statute establishes only guidelines when a pooled lessee does not want to participate in the development. The Commission has (by rule) granted the pooled lessee a right of election. In *Anderson v. Corporation Commission*, Okl., 327 P.2d 699 (1957), we upheld a Commission order which allowed the pooled—lessee the right to participate in the development or accept a bonus for its ⅞ths working interest. Section 87.1(d), inter alia, provides:

"* * * provided, where a lease covering any such separately owned tract or interest included within a spacing unit stipulates a royalty in excess of one— eighth (⅛) of the production, or said lease shall be subject to an overriding royalty, to production payment or other obligation, then the lessee of said lease out of his share of the working interest from the well drilled on said unit, shall sustain and pay said excess royalty, overriding royalty, or production payment, and therefrom meet any other obligation due in respect to the separately owned tract or interest held by him."

The above proviso appears clear and unambiguous and to me it simply states: "Where a lease stipulates a royalty in excess of ⅛th of the production, or is subject to an overriding royalty, production payments, etc., such excess burdens should be satisfied out of the pooled lessee's working interest." If the bonus for the lessee's working interest (free and clear of the burdens in excess of the ⅛th royalty) is not sufficient to satisfy the excess burdens, I find no language whatsoever that would impose the burdens against the poolor. If the above is a correct interpretation, a poolor is required to pay no more than a fair and reasonable bonus if the pooled—lessee elects not to participate in the development.

I am unable to find a material legal distinction between the above statutory language and comparable language first adopted in 1935 (1935 Session Laws, Ch. 59, at pg. 235),[2] codified as 52 O.S.1961, § 87,

---

2. "* * * Provided, where the lease of a person who has sustained his share of the cost of drilling the well on the majority * * * stip- ulates a royalty in excess of one–eighth (⅛) of the production, or said lease shall be subject to an overriding royalty, to an oil payment, or

and repealed in 1947. The 1935 enactment did not provide for forced pooling, and it is evident that any overriding royalty interest, production payment or other obligation in excess of the normal ⅛th royalty, would be satisfied from the ⅞ths working interest from which it originated and from no other interest. Although the language has been modified to some extent so as to be consistent with other changes in our pooling laws, the basic context has remained unchanged.

I respectfully dissent. I am authorized to state that WILLIAMS, BARNES and OPALA, JJ., concur in the views expressed herein.

**OPALA, Justice, concurring in part and dissenting in part:**

Our review is sought of an order by the Corporation Commission [commission] pooling a 640–acre spacing unit for oil and gas development. Three couples [Hulsizers, Mitchells and Kennedys]–all overriding royalty owners–appear here as appellants. Two of them [Mitchells and Kennedys] also have a conversion option to a working interest after payout of well costs. All interests before us underlie a 77.31–acre tract in the pooled unit. The oil–and–gas lessee of that tract [O'Neill]–one of the original appellants–was allowed to dismiss his appeal.

The order under review extends to the lessee, *as well as to all the other appealing interests*, an election between participating in the development or accepting, in lieu of a cash bonus, a fair–share–of–production formula in overriding royalty of ¹⁄₁₆ of ⅞ on oil and casinghead gas and of ⅛ of ⅞ on natural gas and natural gas condensate. Should the lessee decline to participate, he is to bear, out of his share, all override burdens upon his leasehold estate. Without prejudicing their appeal rights, appellants and the lessee all elected not to participate in drilling.

The threshold issue the court deals with here is whether, in the exercise of its pooling authority, the commission may reach for modification interests of those who are *sans* drilling rights *in praesenti* [e. g. owners of overriding royalty, excess royalty, production payment claims, conversion options or similar interests]. The court resolves this issue with an unqualifiedly negative answer thrust upon it by an overly restrictive search for solution sought to be extracted from the narrow text of a single phrase in 52 O.S.1971 § 87.1(d). I cannot accede to the court's view.

By its very nature the commission's *power to force pooling* is brought to bear upon, and its exercise stands confined to, *owners of drilling rights*. 52 O.S.1971 §§ 86.1(d) and 87.1(d). *But its power to affect for modification interests within the pooled unit* is not similarly restricted to that class of interest holders. The two powers–distinct in purpose–are not always co–extensive in sweep. The latter, which is incidental to the former, may be far more expansive when its exercise is necessary to bring about needed adjustment of rights to accomplish forced pooling.[1] Leaseholds, or other working interests, may be so laden with obligations in excess of the usual ⅛ royalty as to constitute by themselves a cumbersome, if not indeed a negative asset, for fair market value appraisal as a working interest. Whenever this occurs, an obstacle to pooling might arise which the commission must have the power to deal with by being able to reach the various burdens for necessary adjustment of the working interest value. I would therefore hold that, *upon proper finding of a tenable ground therefor, supported by substantial evidence, the* commission has the authority to affect, in forced pooling, overriding royalty or oth-

---

other obligation, than the lessee of said lease, out of his share of the seven–eighths (⅞) of the production * * * shall sustain and pay said excess royalty, overriding royalty, or oil payment * * *."

1. Capturing the essence of this distinction, a federal court said that in Oklahoma royalty interests are pooled *"by operation of law"* upon entry of the commission's spacing order, but working interests may not be pooled except by agreement or compulsory unitization order. *Whitaker v. Texaco, Inc.,* 283 F.2d 169, 172 [10th Cir. 1960].

er interests not coupled with drilling rights or working interest *in praesenti.* *Layton v. Pan American Petroleum Corporation,* Okl., 383 P.2d 624 [1963]; *Patterson v. Stanolind Oil & Gas Co.,* 182 Okl. 155, 77 P.2d 83 [1938]; see e. g. *Holmes v. Corporation Commission,* Okl., 466 P.2d 630 [1970].

The other issue the court deals with here is whether a pooling order must provide, as a matter of law, that, with the pooled lessee's election not to participate in drilling, the obligation to pay all of his override or similar burdens shall stand imposed on the unit operator. The court resolves this issue with another absolute answer from which I am compelled to recede.

There is, in my view, *no* statutory impediment to allowing flexibility in allocating lease obligations. My examination of 52 O.S.1971 § 87.1(d) does not lead me to conclude that its provisions mandate either course. *Where a proper finding is made and substantial evidence sustains* the existence of some tenable ground for imposing override or like obligations either on the pooled lessee—whether participant or not—or on the unit operator as part of some pooled rights fair—share—adjustment formula, the commission's decision should be sustained.[2] In the overall adjustment of rights in the pooled area, obligations burdening a leasehold in excess of the usual ⅛ royalty may be imposed on the unit operator or remain the liability of the lessee, but in no case may the unit operator be compelled to pay more than the fair market value of the working interests being pooled. The course taken in each case must, of necessity, depend on the manner in which the working interest involved came to be fitted into the unit operation [whether by participation, via a fair share of production coupled with a cash bonus or without such a bonus].

Cited by the court in support of its conclusion is *Youngblood v. Seewald,* 299 F.2d 680 [10th Cir. 1961]. That case is neither *authority* for this court nor is it persuasive by force of analogy. The question reached

there was confined to declaring the quantum of rights an override owner had vis–a–vis the unit operator. Both parties relied on their diverse interpretation of a not–too–clear commission order. The federal court placed on the commission order a construction deemed by it to be warranted by state statutes and by the face of the record. I can derive from *Youngblood* no intellectual benefit for a decision in this case.

Left undetermined by the commission's findings and unexplained by its order are these salient questions: (1) Why were Hulsizers–who own nothing more than an override interest–extended the opportunity to elect between participation and a production share? (2) Why was there a need to affect their override interest? (3) Why was John Withrow–another override interest owner–treated differently from Hulsizers? (4) Were Mitchells and Kennedys–as conversion option holders–extended an election opportunity because their interest to participate *in futuro* [after payout of well costs] was treated as equivalent to one *in praesenti* or because the poolor desired to "accelerate" that interest and hence advance it for immediate satisfaction? (5) Does the commission order operate to "extinguish" the Mitchell and Kennedy conversion option interests? (6) Could appellants have elected to participate even though their lessee did not choose a like course? (7) If the last answer be in the affirmative, what would be the appellants' working interest share and their "proportionate part" of production costs?

Without the commission's answer to most of these questions the regimen imposed by the order before us is too vague for judicial construction. The most serious impediment to present review lies in the commission's utter failure to make essential explanatory findings as to the very basis upon which its determination is sought to be rested.[3] For this reason alone I would be constrained to reverse.

2. *Superior Oil Co. v. Oklahoma Corp. Commission,* 206 Okl. 213, 242 P.2d 454, 457 [1952].

3. *Tecumseh Gas System, Inc. v. State,* Okl., 537 P.2d 421 [1975]. See also *State v. Guardian Funeral Home,* Okl., 429 P.2d 732, 736 [1967].

I would reverse with directions to make specific findings that are responsive to the issues formed and inherent in the proceedings below, applying principles of law expressed in this opinion.

I am authorized to state that IRWIN, V. C. J., and BARNES, J., concur in these views.